## Hughes *v.* Fayette Manufacturing Company, Appellant.*

*Negligence—Master and servant—Dangerous machine—Notice to employer.*

Where an employee in a brick manufacturing establishment notices sparks flying from a wheel at which he is at work, and also that the wheel makes a screeching noise, and he complains to the superintendent that he does not like the looks of things, and the superintendent tells him to go ahead with his work, that there is no danger, and that he, the superintendent, would have the wheel fixed, the employer will be liable for personal injuries sustained by the employee by the subsequent breaking of the wheel while the employee continues to work at it.

A servant is not entitled to have his case submitted to the jury, unless he introduces, in addition to the fact of the occurrence of the accident, some specific testimony which fairly tends to show that the employer was guilty of negligence. In the absence of such testimony the case must obviously fall within the operation of the principle that an action is not maintainable where the plaintiff's evidence is equally consistent with the absence or with the existence of negligence. This rule, however, does not imply that it is only from direct evidence that the master's culpability can be inferred. The burden of proof is satisfied by the production of circumstantial evidence.

Argued Feb. 7, 1905. Reargued Feb. 5, 1906. Appeal, No. 283, Jan. T., 1904, by defendant, from judgment of C. P. Delaware Co., June T., 1903, No. 78, on verdict for plaintiff in case of Samuel S. Hughes *v.* Fayette Manufacturing Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ., on reargument. Affirmed.

Owing to my being of counsel; the report of this case was prepared by Albert B. Weimer, Esq., Assistant State Reporter.—Wm. I. Schaffer, State Reporter.

Trespass to recover damages for personal injuries. Before JOHNSON, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

. Towards the conclusion of the plaintiff's case, counsel for plaintiff made the following offer:

Mr. Alexander: If your honor please, just one minute. I would like to offer in evidence the Carlisle tables to show the expectancy to us.

Mr. Schaffer: They are objected to.

. The Court: Objection overruled.

Mr. Schaffer: Will your honor grant me an exception?

The Court: Yes. They are slight evidence. [6]

Defendant presented these points:

1. The allegata and probata in the case not being in agreement, the verdict must be for the defendant. *Answer:* Refused. [3]

2. Under all the evidence in the case, the verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $5,378.62. Defendant appealed.

*Errors assigned* were (2) in entering judgment on verdict for plaintiff; (3, 4) answer to points; (5) in charging that "To entitle this plaintiff to recover he must be free from negligence himself, because if he materially contributed by his conduct to this accident he cannot recover;" (6) ruling on evidence, quoting the bill of exceptions.

*William I. Schaffer,* with him *John A. Poulson* and *Maurice W. Sloan,* for appellant.—The master must know of the danger; he must know not that the conditions exist, but that they involve danger to the servant to be held liable: Labatt on Master and Servant, 260; Snodgrass v. Carnegie Steel Co., 173 Pa. 228; Corcoran v. Wanamaker, 185 Pa. 496.

The doctrine res ipsa loquitur, dangerous and uncertain at best, is never to be applied except where it not only supports the conclusion contended for, but also reasonably excludes every other: Allen v. Kingston Coal Co., 212 Pa. 54.

We are unable to reconcile the case in hand with the cases of which Alexander v. Pennsylvania Water Co., 201 Pa. 252; Augerstein v. Jones, 139 Pa. 183; Simpson v. Locomotive Works, 139 Pa. 245, are examples, and we respectfully suggest that it may extend the doctrine in Reese v. Clark, 198 Pa. 312, to very dangerous limits in the administration of the law of negligence.

It is not permissible to guess at the cause of an injury, and assume it something for which defendant was responsible: Reese v. Clark, 146 Pa. 465; Oil Company v. Torpedo Company, 190 Pa. 350.

A theoretical cause will not suffice to explain an accident: McClain v. Henderson, 187 Pa. 283; Benson v. Allegheny Heating Co., 188 Pa. 614; Mixter v. Imperial Coal Co., 152 Pa. 395; Wagner v. Traction Co., 212 Pa. 132.

The true rule would seem to be that a promise to repair by a superintendent is only binding upon the employer where the law imposes the duty irrespective of the promise. If the law does not impose the duty a vice principal cannot impose it: Leonard v. Herrmann, 195 Pa. 222; Diehl v. Lehigh Iron Co., 140 Pa. 487; Lehman v. Carbon Steel Co., 204 Pa. 612.

The allegata and probata must agree in cases of tort as in other cases: Goodman v. Coal Township, 206 Pa. 621; Wiest v. Electric Traction Co., 200 Pa. 148; Noonan v. Pardee, 200 Pa. 474; Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Ryder v. Jacobs, 182 Pa. 624; Ubelmann v. American Ice Co., 209 Pa. 398.

Any contributory negligence on the part of the plaintiff defeats his right to recover: Monongahela City v. Fischer, 111 Pa. 9; Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449; Long v. Milford Township, 137 Pa. 122; Mattimore v. Erie, 144 Pa. 14.

To admit the Carlisle tables in the way in which they were admitted without any explanation from the court as to what they were and without any caution from the court to the jury as to the weight to be given them as evidence, was error: Kerrigan v. Pennsylvania R. R. Co., 194 Pa. 98; McKenna v. Citizens' Natural Gas Co., 198 Pa. 31; Emery v. Phila., 208 Pa. 492; Iseminger v. York Haven Water & Power Co., 209 Pa. 615.

An employee who continues in the employment which by reason of defective machinery or appliances he knows to be dangerous assumes the risk of any accident that may result therefrom: Talbot v. Sims, 213 Pa. 1.

*William C. Alexander*, for appellee.—The real question is, did the chain of circumstances, testified to by the plaintiff and his witnesses in this case, raise an inference of negligence on the part of the defendant? If it did, then the burden was on the defendant to overcome that inference, and whether the evidence of the defendant did overcome that inference, was a question for the jury: Folk v. Schaeffer, 186 Pa. 253.

The case at bar is ruled as to the question of negligence on the part of the defendant by: Sopherstein v. Bertels, 178 Pa. 401; O'Brien v. Sullivan, 195 Pa. 474; Calhoun v. Holland Laundry Co., 208 Pa. 139.

There was a duty resting upon the company to know, as far as it was possible to know, the character of the material which it placed in the hands of its agents: Tissue v. B. & O. R. R. Co., 112 Pa. 91; Wagner v. Jayne Chemical Co., 147 Pa. 475; Shearman & Redfield on Negligence, sec. 185 et seq.

A servant is not called upon to set up his own unaided judgment against that of his superiors. His dependent and inferior position is to be taken into consideration and if the master gives him positive orders to go on with the work under positive circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably or imminently dangerous: Patterson v. P. & C. R. R. Co., 76 Pa. 389; Wagner v. Jayne Chemical Co., 147 Pa. 475; Reese v. Clark, 198 Pa. 312; Calhoun v. Holland Laundry Co., 208 Pa. 139.

OPINION BY MR. JUSTICE POTTER, March 5, 1906:

The plaintiff was employed as a brick molder in the works of the defendant company. He worked at a table in the mixing room which was near the machinery by which the material used to manufacture the bricks was broken and ground. This consisted of a pan set on the floor in which heavy rollers were revolved by means of a vertical shaft in the center of the pan. The shaft was attached to a horizontal wheel some eight feet from the floor, and this wheel weighed over 1,900 pounds and

was some five and a half feet in. diameter.   The wheel was
furnished with cogs and teeth, and was operated by another
cogwheel connected by a shaft with the electric power.   While
in operation this wheel turned slowly, making only about thirty-
eight revolutions per minute.

On March 27, 1903, while the machinery was in operation,
plaintiff noticed that sparks were flying from the crown wheel
and also that it was making a screeching noise.   He had noticed
the sparks the afternoon before, and had then spoken to his
brother, Edwin Hughes, who worked in the same room, about
it ; and the latter testified that " The machinery was not working
quite in order."   Both the plaintiff and his brother testified
that shortly after Mr. Griffith, the superintendent of the mill,
came in, and they both called his attention to the sparks fly-
ing from the wheel, and the plaintiff said, " That wheel there
did not look quite right to me ; " and that he did not care
about working at the pan.   Griffith told him to go ahead ; that
there was no danger, and that he would have it fixed.   Two
other witnesses, also workmen in the mill, William Smith and
George A. Rice, testified that they saw fire flying from the
cogs of the wheel both on March 27, and on the previous aft-
ernoon.   After the alleged conversation with Griffith, the su-
perintendent, plaintiff went back to his table and continued to
work.   In about half an hour, the crown wheel broke into three
pieces, one of which fell upon his leg inflicting serious and
permanent injuries.

There was no positive evidence as to the cause of the break-
ing of the wheel.   Edwin Hughes testified that immediately
after the accident the upright shaft on which the cogwheel
worked was out of plumb.   He also said that the cogs in the
crown wheel were cut down to about a half inch all the way
around—" just tapered to a sharp point, and sometimes knocked
off.   They were worn right down in one another."   The
witness Smith testified that after the accident some of the
cogs on the broken wheel were all ripped off.   From this tes-
timony it was argued that the breaking of the wheel was
caused by the shaft being out of plumb which resulted in in-
creasing the friction upon the cogs.   There was no direct tes-
timony that the shaft was out of plumb before the accident,
but the evidence was such that the jury might infer that it

was.   The defendant offered testimony to show that the wheel
frequently emitted sparks, that this was caused by dust and
gritty substances coming in contact with the wheel and cut-
ting the grease; that sparks were never considered a sign of
danger, but merely that the wheel needed oiling; that this
wheel was new, and had been purchased from manufacturers
of high standing; that the upright shaft was not perfectly rigid
and could not have been operated if it had been, but worked
in a socket; that only one cog was broken, that the cogs were
not broken in such a way as to indicate that they had been
worn down before the breaking of the wheel; and that the
broken wheel showed no defect in it that might have caused it
to break.

The court below reserved the question of law, " Has any
evidence been submitted which entitled the plaintiff to re-
cover ? "   The jury found for the plaintiff, and the court sub-
sequently refused to enter judgment for the defendant on the
point of law reserved, and did enter judgment for the plaintiff
on the verdict.   This action is assigned as error; as is also the
refusal of the court to give binding instructions for the de-
fendant.

If the evidence of sparks from the machine were the only
thing in the case, there should have been no submission to the
jury, as the mere absence of oil, or the presence of particles of
dust will cause sparks to fly, as was shown by uncontradicted
evidence.   But there was much more in the case than this.
The plaintiff testified that the wheel was making a screeching
noise on the day of the accident, as well as emitting sparks ;
and he complained to the defendant's superintendent that he
did not like the looks of things, and was averse to continuing
his work at that point. . In reply, the superintendent told the
plaintiff to go ahead with his work, that there was no danger,
and that he would have it fixed.

In view of the evidence of the screeching noise, and the fact
that so many witnesses noticed the fire flying, it would seem
that there was more friction in the working of the machinery
than usual, and that it may have indicated more serious trouble
than the mere lack of oil or the presence of dust.   We do not
feel that we can say as a matter of law that the jury were not
justified, in finding that the defendant was negligent in failing

to examine and readjust the machinery, when complaint of its improper working was made. It will not do to hold that in such cases as this, the plaintiff must make an absolute explanation as to the actual cause of the accident. The reason for the breakage of machinery which is run under heavy strain, is oftentimes obscure, and it would seem that where, as in this case, the operation of the machine was so obviously abnormal as to frighten experienced workmen, the jury might be justified in saying that the defendant was negligent in ordering the plaintiff back to work without stopping the machinery and having a careful examination made, in order to detect the cause of the trouble.

A true statement of the rule applicable to such circumstances is, we think, set forth in 2 Labatt on Master and Servant, sec. 835, as follows : " A servant is not entitled to have his case submitted to the jury, unless he introduces, in addition to the fact of the occurrence of the accident, some specific testimony which fairly tends to show that the employer was guilty of negligence. In the absence of such testimony the case must obviously fall within the operation of the principle that an action is not maintainable where the plaintiff's evidence is equally consistent with the absence or with the existence of negligence. This rule, however, does not imply that it is only from direct evidence that the master's culpability can be inferred. The burden of proof is satisfied by the production of circumstantial evidence."

As we said in Folk v. Schaeffer, 186 Pa. 253, " under the circumstances shown by the plaintiff, the burden was thrown on the defendant to show that due care had been used, and in the absence of any explanation the jury might infer want of care."

There is nothing in the evidence as we view it, to justify any charge of contributory negligence against the plaintiff, so that the instruction of the court in this respect was not material, and while counsel for plaintiff signified his wish to offer in evidence the Carlisle tables, yet it does not appear that they were used in any way, before the jury ; therefore, the complaint that the court failed to point out their proper office, and the limitations upon their use, is not well founded. We are satisfied that upon the whole record, this case was for the jury, and

we do not find any reversible error in the manner of its submission.

The assignments of error are overruled and the judgment is affirmed.