# Franczak v. Nazareth Cement Company, Appellant.

*Negligence—Master and servant—Safety appliances—Safe place to work—Contributory negligence—Custom.*

1. A servant is not required to act on his own judgment against that of his employer, and if the latter give him positive instructions to go on with a particular task he may recover for any injury received if the work is not imminently dangerous.

2. Where a workman employed in a quarry, in hurriedly attempting to cross a track to avoid an approaching car, is directed by the foreman to stop and remove a stone on the track, with the assurance from the foreman that there is plenty of time for him to do so and get away, but is injured in the act, he cannot be charged with contributory negligence.

3. Where the plaintiff in an accident case alleges that his injuries were caused by the failure of the defendant to use proper safety appliances, he must prove that the appliances used were not as well adapted to securing the safety of the operatives as the plans in use elsewhere. He cannot simply show that the method adopted by the defendant was not the same as generally used.

Argued Dec. 8, 1909. Appeal, No. 127, Oct. T., 1909, by defendant, from judgment of C. P. Northampton Co., Sept. T., 1908, No. 33, on verdict for plaintiff in case of John Franczak v. Nazareth Cement Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before STEWART, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[When it comes to the appliances and the methods, which in this case would refer to this car and to this track, and the method of operating this car when it was to receive this rock that was dumped into it, there the rule of law is that this cement company would have discharged its duty to the plaintiff if it had furnished him with appliances of ordinary character and reasonable safety, and the former, that is, the ordinary character of this car or truck would be the test of its reasonable safety, because anything that is reasonably safe would be a car or a method that was safe according to the usages and habits and the ordinary risks of the business. What the people who are in that business would ordinarily use is what you want to get your minds on. The cement company is not bound to get the very latest thing by way of invention, or the very latest improvement that may be adopted. It is not what you think you would have used; that is not the test, but what was the appliance or the machinery that was ordinarily used by people in that line of business. And where a company furnishes that method of doing business, which is the ordinary method, it discharges its full duty toward its employees or workingmen.] [8]

[Now, the plaintiff, by these superintendents, some of whom had some years of experience, some of whom have had experience in two or three or four plants and have observed what was done in these various cement plants, has undertaken to prove that this car should have had brakes, or that they should have used a block either of wood or of stone, and that having in view the fact that the defendant company was accustomed to dump large weights of stone of a ton or two into these cars at an angle of forty-five degrees, at a height which the witnesses have testified to, and which, as I remember it (although it is for you) was something over two feet, that dumping in that way, at that angle, had a tendency to make this car move forward by the stone falling in it, particularly when it fell toward the front of the car, and that they, in view of these circumstances should have had a brake, or should have used a block either of wood or of stone.

The defendant, on the other hand, has called witnesses also, men of experience, and they have testified as to their knowledge of the various plants with which they are connected, a number of them had experience in different plants, and they have said, as I remember their testimony (although it is for you), that the method which the defendant used was a reasonably safe method according to the usual practice of people in that business in this county and the other counties, and that it was not dangerous; and they ask you to say that you cannot convict them of any negligence by reason of the fact that they did not furnish the plaintiff with the kind of tools and appliances which the law would compel them to furnish.

The burden is on the plaintiff to satisfy you by the weight of the evidence of his contention with reference to this matter. If you believe that the defendant did all that the law required, according to this test which I have laid down, then your verdict would be in favor of the defendant in this case.] [9]

[Now, gentlemen of the jury, it is for you to say, taking into connection the fact that this plaintiff saw, as I remember the testimony (although it is for you), six or seven cars that were brought up and loaded on that morning, whether he ought to have seen that this car would move forward in the

way that the witnesses say it moved on this morning and caused this accident. If you believe that that movement of the car would not have been seen by a man of ordinary experience and understanding, that it was something which the defendant should have specially instructed the plaintiff about, then it would be some evidence of the defendant's negligence upon that branch of the case, because it is the defendant's business to give warnings of dangers of that sort if you believe that they existed in this case.] [10]

[Was there anything in this case said by Brish to this man, John Franczak, because in my view of the case it is very important indeed. If Brish did not tell John that he had plenty of time when that car was approaching about fifteen feet off, as I remember it, being pushed as it must have been by Lewis Masurok and the other Hungarian who is not here, being pushed up when it was about fifteen feet off and when John had that stone in his hand about to throw over into the quarry, and when Brish himself was telling the men in the quarry below to look out, if he did not say those words to John, then John when he undertook to throw that stone over and to get back in time to avoid this accident would be guilty of contributory negligence.] [11]

[But, if, on the other hand, you believe that Brish said this and that John relying on the judgment of his foreman instead of going over to the mill side, as I remember his testimony, he intended to do, relying upon what Brish said, went back and put the stone over the quarry and then in attempting to get back to the other side was caught between the car and the post, he would not be guilty of contributory negligence.] [12]

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1–7) various rulings on the admission of expert testimony, quoting the bill of exceptions, and (3–12) above instructions, quoting them.

*G. F. Coffin*, of *Reeder & Coffin*, for appellant.—The plaintiff was bound to make out a case clear of contributory neg-

ligence and this may be properly described as a burden, though a negative one: Heiss v. Lancaster, 203 Pa. 260; McDonald v. Iron & Coal Co., 135 Pa. 1; Dooner v. Canal Co., 171 Pa. 581; Cypher v. Coal Co., 149 Pa. 359; Bentley v. Planing Mill Co., 38 Pa. Superior Ct. 172; Schlemmer v. Buffalo, etc., Ry. Co., 222 Pa. 470.

The general rule is that opinion evidence whether expert or nonexpert is inadmissible in respect of the dangerous character of work, situations, appliances, etc., when all the facts can be ascertained and made intelligible to the jury, or. when the subject is such as men in general are capable of comprehending and understanding: Dooner v. Canal Co., 164 Pa. 17; Graham v. Penna. Co., 139 Pa. 149; Cunningham v. Bridge Works, 197 Pa. 625; Bardsley v. Gill, 218 Pa. 56.

*Calvin Smith*, of *Smith, Paff & Laub*, for appellee.—The duty of the defendant company is set forth in Rummel v. Dilworth, Porter & Co., 131 Pa. 509; Bannon v. Lutz, 158 Pa. 166; DeGrazia v. Piccardo, 15 Pa. Superior Ct. 107; McCray v. Varnish Co., 7 Pa. Superior Ct. 610; Lillie v. Foundry Co., 209 Pa. 161.

The plaintiff was not guilty of contributory negligence: Doyle v. Pittsburg Waste Co., 204 Pa. 623; Reese v. Clark, 198 Pa. 312; Williams v. Clark, 204 Pa. 416; Maines v. Harbison-Walker Co., 213 Pa. 145.

An employee is not presumed to know whether his employer has furnished appliances which are reasonably safe and in ordinary use in case of latent dangers, and in such case he is not chargeable with the assumption of the risk involved: Cunningham v. Bridge Works, 197 Pa. 625.

OPINION BY HENDERSON, J., March 3, 1910:

The plaintiff charged the defendant with negligence in three respects: failure to provide its stone cars with appliances to keep them in place during the process of loading; in omitting to instruct the plaintiff, an inexperienced employee, of danger not obvious in the exercise of ordinary care, and in failing to provide the plaintiff with a safe place in which to work; and

evidence was offered tending to support each of these allegations. The defendant was engaged in the manufacture of cement and this included the operating of a quarry out of which quantities of rock were elevated by a derrick hoist and dumped onto small cars in use to transport the rock to the mill. The cars were backed by hand into the derrick and the rock lifted from the quarry was conveyed to an elevation about two feet above the car and dumped at an angle of about forty-five degrees into the car. The momentum of this load of stone forced the car forward and the plaintiff was caught between it and one of the derrick posts thereby receiving a serious injury. He had been in the service of the company about ten years and at the time of the accident and for a long time before served in the capacity of water boy, carrying water to the quarries. He had never before worked at this derrick and as claimed by him was not familiar with the operations there carried on. On the day of the accident he was removing from the track where the cars were loaded a lot of loose stone which had fallen from the cars in the process of loading. He had been engaged at this work for about fifteen minutes when he was hurt. The derrick hoist stood on the brink of the quarry where there was a sheer descent of about thirty-six feet to the bottom. The plaintiff's evidence was to the effect that when the car was backed into the loading place he was standing on the ledge outside of the derrick where there was a space of two or three feet next to the quarry; that he was about to step across the track to get away from the car because of the risk he ran of being hit by stones from the derrick bucket and had gone about four feet toward the other side of the track when the foreman who was present directed him to pick up a large stone which had fallen from the car and throw it over into the quarry, at the same time assuring him that there was plenty of time. The plaintiff obeyed this instruction and immediately thereafter started to cross the track when the bucket of stone was dumped into the car, forcing the car against him and injuring him. Evidence was offered to show that the method of loading the car, with reference to its stability, was not the same as that used in other

quarries and that it was more dangerous. The defense was that the defendant was not negligent in providing suitable appliances; that the method adopted was a usual and ordinary one in the business; that the plaintiff was not acting under the direction of the foreman in clearing the stone away from the track and that he was guilty of contributory negligence.. The assignments of error relate to the subject of contributory negligence, the competency of the evidence of experts on the manner of loading and some portions of the charge of the court. Giving credit to the plaintiff's evidence, there is little basis for the contention that the plaintiff was chargeable with contributory negligence. It is true that six or seven cars had been brought to the derrick and taken away while he was employed about it that morning, but there is no evidence that he observed the effect of the discharge of the stone into the car or that he had reason to apprehend the danger which overtook him. Moreover, if he worked under the express order of the foreman and remained on the ledge to throw over the stone with the assurance that there was plenty of time for him to get away he had a right to rely on the advice of his superior unless the danger was apparent. The servant is not required to act on his own judgment against that of his employer, and if the latter give him positive instructions to go on with a particular task he may recover for any injury received if the work was not imminently dangerous: Reese v. Clark, 198 Pa. 312; Maines v. Harbison-Walker Co., 213 Pa. 145; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543. The plaintiff, then, not only had this assurance of sufficient time to get away but he was also as he supposed in danger of being struck by stone discharged from the bucket and knocked into the quarry below if he remained where he was. If in the emergency the choice of means of protection which he made proved to be least safe he is not to be charged with negligence on that account. It may be taken for granted that in accepting the service imposed upon him he assumed such risks as were incident to its performance from causes which were so obvious that he had an opportunity to ascertain them, but as to special danger of the employment of which he had no knowledge and which was

not apparent he was entitled to notice and his employer be-came liable if he failed to advise him of the risk. It is due to him that the dangers of the situation be pointed out and that he be instructed in the things he should know in order that he may provide for his own safety: Rummel v. Dilworth, Porter & Co., 131 Pa. 509; Lillie v. American Car & Foundry Co., 209 Pa. 161; DeGrazia v. Piccardo, 15 Pa. Superior Ct. 107. Many other authorities are to the same effect. The learned trial judge left to the jury the question whether the forward movement of the car was an obvious one which the plaintiff knew or should have known, and also the question whether the plaintiff was specially instructed to throw the stone into the quarry and whether he was told that there was plenty of time to do that and to get away and the instructions on these points were clear and full and in strict accordance with the authorities cited and many others. The action of the court on the admission of the expert evidence showing the manner in which cars were loaded at other quarries and cement works accorded with the ruling in Bardsley v. Gill, 218 Pa. 56, and Cunningham v. Bridge Works, 197 Pa. 625. The plaintiff's allegation was that the defendant failed to adopt the usual safeguards to secure the stability of the car when loaded. The witnesses called had had large experience in the manufacture of cement and a considerable observation of the methods adopted at cement quarries in that region. It would have been competent to prove the method adopted in the par-ticular quarries at which the witnesses worked. As was said in Bardsley v. Gill, 218 Pa. 56: "No single instance is sufficient to prove a custom, but custom is certainly made up of an aggre-gation of different instances. It was a question of fact for the jury to say what the general custom was after the evidence of the methods in use in various concerns was before them." The evidence certainly tended to show the usage at similar estab-lishments, and its value was to be estimated by the jury after the witnesses had shown familiarity with the subject. It is not enough to prove that the method adopted at the defend-ant's quarry was not the same as generally used. If the evi-dence stopped there the inference might be that it was a newer

and better method. The plaintiff must go further and show that it was not as well adapted to securing the safety of the operatives as the plan in use elsewhere. The charge of the court adequately and clearly covered the questions of law involved and guarded the rights of the defendant to the extent to which it was entitled under the evidence. We do not find any sufficient reason to justify the reversal of the judgment.

The judgment is affirmed.