## McBride v. William Cramp & Sons Ship & Engine Building Company, Appellant.

*Negligence—Master and servant—Ship building company—Unsafe place to work.*

1. In an action by a boy seventeen years old against his employer, a ship building company, to recover damages for personal injuries resulting from an upright wooden stanchion falling upon him, the case is for the jury and a verdict and judgment for the plaintiff will be sustained where the evidence tends to show that the plaintiff was employed as a ship fitter's helper, that while he was at work he was surrounded by wooden stanchions standing perpendicularly between the decks, that it was customary to secure these stanchions in place at top and bottom, that owing to constant vibration they would work out of place, that the stanchion which fell upon the plaintiff was in a shaky condition before the accident, and that this was known to the ship carpenters who had not corrected the trouble.

2. In such a case the defendant cannot relieve itself from liability by setting up as a defense that the unsafe condition of the stanchion was due to the negligence of the plaintiff's fellow servants; nor is it a defense that the plaintiff did not examine the stanchion.

Argued Oct. 6, 1911. Appeal, No. 51, Oct. T., 1911, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1905, No. 907, on verdict for plaintiff in case of Charles McBride, a minor, by his father and next friend, James McBride, and James McBride in his own right v. The William Cramp & Sons Ship & Engine Building Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BARRATT, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Charles McBride for $1,000, and for James McBride for $50.00. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Joseph Gilfillan,* of *Graham & Gilfillan,* for appellant, cited: McGregor v. R. R. Co., 212 Pa. 482; Kilgour v. Steel Co., 56 Pittsburg Leg. J. 320; Studebaker v. Tube Co., 226 Pa. 239; Groves v. McNeil, 226 Pa. 345; Martin v. R. R. Co., 166 U. S. 399 (17 Sup. Ct. Repr. 603); Miller v. Bridge Co., 216 Pa. 559.

*Frederick H. Warner,* for appellee, cited: Vanesse v. Coal Co., 159 Pa. 403; Durst v. Steel Co., 173 Pa. 162; Lillie v. American Car & Foundry Co., 209 Pa. 161; Mapes v. Provision & Packing Co., 31 Pa. Superior Ct. 453; Potter v. Gas Co., 183 Pa. 575; McCoy v. Gas Co., 213 Pa. 367; Hughes v. Fayette Mfg. Co., 214 Pa. 282.

OPINION BY RICE, P. J., March 1, 1912:

This is an appeal from a judgment in favor of the plaintiffs in an action for personal injuries alleged to have resulted from the negligence of the defendant. The official report of the trial shows that at the conclusion of the judge's charge the defendant excepted to the refusal of its point for binding direction, but it does not appear that an exception was taken to the charge. Subsequently, a verdict having been rendered in the plaintiffs' favor, the defendant moved for judgment non obstante veredicto, under the Act of April 22, 1905, P. L. 286. The first, fourth and fifth assignments of error relate to the refusal of the defendant's point and the order dismissing its motion for judgment n. o. v. The second and third assignments relate to certain portions of the charge, but, as the charge was not excepted to before verdict, these assignments will not be considered. The question properly before us, and the only question seriously pressed by the learned counsel for the appellant on the oral argument, is whether binding direction in favor of the defendant would have been warranted. In the consideration of that question, we must assume the existence of every fact, essential to the plaintiffs' recovery, which the jury could have found from the evidence, and of every inference of fact which they could legitimately draw from the facts thus found.

In December, 1904, the plaintiff, then seventeen years of age, was employed by the defendant as a ship fitter's helper, inside the battle ship Mississippi, which was being constructed by the defendant. The compartment in which he was at work was in the bottom of the hull, between what are called, in the testimony, the inner bottom, to distinguish it from the sea bottom, and the protective deck above, which was in course of construction. At the time he was injured he was kneeling down and trying to extract bolts "so as to make an impression on a mould." This is not a very clear description of the work in which he was engaged, but it is clear enough for present purposes, for it is undisputed that the work was being done by him in the strict line of his duty as a ship fitter's helper. He testified that he was surrounded by wooden stanchions that extended perpendicularly from the inner bottom to the beams of the protective deck above. These stanchions were about sixteen feet long and six inches square. It is fairly deducible, from the testimony, that, in order to hold them in place, it was necessary and was the practice to drive wedges underneath them to force them up to the top, and, as there was considerable and constant vibration, to secure them at the top also, either by clamps or by lashing them to the beam with a rope drawn through a hole in the upper end of the stanchion, "so," as the plaintiff explained in his testimony, "if the wedges should happen to slip out from underneath, the log wouldn't fall." While the plaintiff knelt at his work, one of these stanchions fell upon his leg, without any contributing action on his part, and caused a compound fracture. A witness testified that, although this stanchion had a hole in it, so that it could be lashed to the beam, yet, for at least two days before the accident, it had not been so lashed and had not been fastened at the top by clamps. Another witness testified, in substance, that the wedges at the foot of this stanchion had been loosened by some workmen six or seven days before the accident, and that during the intervening time the stanchion was shaky and uncertain,

so that the witness was unwilling to take the risk of working on a scaffold that was built around it. He said that he called the attention of the ship carpenters to the shaky condition of the stanchion and that they failed to make it fast, as they should have done. With regard to the vibrations caused by the riveting, he said: "As soon as starting a machine if you leave a piece of stuff on the deck she keeps on going until she goes off the deck." There is more testimony to the same effect. In discussing the testimony of this witness as to the shaky condition of the stanchion, the learned counsel for the appellant say: "If this is so, it was as clearly apparent to the plaintiff and if he undertook to work there under such circumstances he cannot be heard to say that he did not assume the risk incident thereto." But the witness, by reason of his occupation and duties, had special occasion to observe, while the plaintiff had not. He had nothing to do with the erecting, inspecting, or keeping in safe condition the stanchions, and, though the work in which he was engaged was near this stanchion that fell, it had no direct connection with it. His testimony that he went to work about 7 o'clock of a December morning without observing the dangerous condition of the stanchion, involves no impossibility or even improbability. Nor does the fact that he did not examine the stanchion in order to ascertain its condition necessarily lead to a conclusion of negligence on his part which the court could declare as matter of law. The utmost that can be claimed is that these were questions of fact for the jury. Another point urged is, that the cause of the falling of the stanchion was not proved with sufficient clearness to warrant the jury in inferring that it was any negligent act or omission of the defendant. But it was not necessary for the plaintiff to prove that it was due to the absence of fastening at the top alone, or to the insecure condition of the base alone, or to prove, to a demonstration, that if neither of these conditions had existed the stanchion would not have fallen. "A servant is not entitled to have his case submitted to the jury, unless he introduces, in

addition to the fact of the occurrence of the accident, some specific testimony which fairly tends to show that the employer was guilty of negligence. In the absence of such testimony the case must obviously fall within the operation of the principle that an action is not maintainable where the plaintiff's evidence is equally consistent with the absence, or with the existence, of negligence. This rule, however, does not imply that it is only from direct evidence that the master's culpability can be inferred. The burden of proof is satisfied by the production of circumstantial evidence:" 2 Labatt on Master and Servant, sec. 835. In Hughes v. Fayette Mfg. Co., 214 Pa. 282, this was quoted as a true statement of the rule applicable to the case, and, in the same connection, Justice POTTER said: "It will not do to hold that in such cases as this, the plaintiff must make an absolute explanation as to the actual cause of the accident." See also Lillie v. American Car & Foundry Co., 209 Pa. 161. This remark and the rule as above stated are equally pertinent in the present case. Granting the fact of great vibration, as above described and abundantly proved, it cannot be said that the jury would have been merely guessing in finding that the stanchion fell because it was allowed to be in an insecure condition, and that, in view of all the circumstances, this was negligence. Another principle urged on our attention, as justifying binding direction for the defendant, was thus stated by Justice STEWART, in Schneider v. Phila. Quartz Co., 220 Pa. 548: "When the work is of such character that the environment of the servant as the work progresses necessarily undergoes frequent changes, the master is not bound to protect the servant engaged in it against dangers resulting from such changes: Labatt, Master and Servant, p. 1772. This doctrine results from the fact that the prosecution of the work does make the place dangerous; but it is not the duty in such case for the master to follow up the servants every moment to see that they make the place safe." The answer to this contention is, that the extraordinary risk to which the plaintiff was

subjected did not result from necessary changes in the progress of the work. These stanchions, although intended to serve a temporary purpose, were necessarily maintained for a period of time extending over several months, according to the testimony of some of the witnesses. The time had not arrived for removing them, and no occasion had arisen in the progress of the work for changing the mode of securing them in place. But it is insisted, and this point is very strenuously urged by the learned counsel for the appellant, that even if the stanchion was in a negligently unsafe condition, this was attributable to the plaintiff's fellow servants and did not involve any failure of duty on the part of the common employer. We have given very careful consideration to this argument and the authorities cited by the learned counsel in support of it. Notwithstanding what they have so well said upon the subject, we do not think it can be successfully controverted that the duty to an employee which rests on his employer, to provide him a reasonably safe place in which to work, imposed on this defendant the duty of exercising care in adopting and applying a method of securing these stanchions against being toppled over, by the constant vibration, upon a workman engaged in other parts of the construction. If these premises are correct, and we think they are, the duty was a continuing one, and, therefore, although the defendant exercised due care originally in adopting and applying the method of securing the stanchion that fell on the plaintiff, yet, if it was in a negligently unsafe and dangerous condition at the time of the accident, and the defendant knew it, or, if it had existed for such length of time as to affect the defendant, or the vice principal to whom the defendant had delegated the duty of inspection and maintenance, with notice, and, in either case, a reasonable length of time had elapsed to enable the defendant to remedy it, it is no answer to say that it fell into this dangerous condition through the negligence of the plaintiff's fellow workmen. See Lillie v. American Car &

Foundry Co., 209 Pa. 161, and cases there cited, and Lininger v. Westinghouse Air Brake Co., 210 Pa. 62. Without further elaboration or citation of authorities, we conclude that the proper decision of the case depended upon facts and inferences which it was the province of the jury to determine.

The judgment is affirmed.