(6 Misc. Rep. 429.)

### KUHLMAN et al. v. CITY OF BROOKLYN.

(City Court of Brooklyn, General Term. January 22, 1894.)

EMINENT DOMAIN—COMPENSATION—RIGHTS OF MORTGAGEE.

A mortgage of city lots, which excludes from the premises described therein so much as had been taken for the widening of a street, and restricts the conveyance to the parts of the lots not taken, does not convey the award for the portions taken. Engelhardt v. City of Brooklyn, 21 N. Y. Supp. 777, 3 Misc. Rep. 30, distinguished.

Appeal from trial term.

Action by Wilkin Kuhlman and others against the city of Brooklyn. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

Argued before VAN WYCK and OSBORNE, JJ.

Chas. C. Smith, for appellants.

Almet F. Jenks, for respondent.

VAN WYCK, J. This is an action to recover awards made for land (the front strips of two lots) taken for the widening of North Second street in this city, under an act passed April 19, 1871, (Laws 1871, c. 559.) This is an appeal from a judgment in favor of defendant. Plaintiffs' alleged claim to the awards rests upon a mortgage made after the passage of the act, which mortgage expressly excludes from premises described therein the land taken for the widening of this street, and restricts the conveyance to the parts of the lots not taken. No intention to assign these awards can be inferred from this mortgage. In Engelhardt v. City of Brooklyn, 3 Misc. Rep. 30, 21 N. Y. Supp. 777, cited by plaintiffs, and Delap v. City of Brooklyn, 3 Misc. Rep. 22, 22 N. Y. Supp. 179, we held that there was an assignment, for the reason that the mortgages in those cases were the exact reverse of this one, in that they conveyed the whole of the lot by metes and bounds, as if no part thereof had been taken for the widening of the street. Judgment must be affirmed, with costs.

---

(6 Misc. Rep. 441.)

### BYRNE v. BROOKLYN CITY R. CO.

(City Court of Brooklyn, General Term. January 22, 1894.)

MASTER AND SERVANT—SAFE PLACE FOR SERVANT TO WORK IN.

The fact that the side of an excavation gave way because of the insufficiency of the grade shows a failure of the duty to provide a safe place for the men at work in the excavation.

Appeal from trial term.

Action by Ann Byrne, as executrix of Philip J. Byrne, deceased, against the Brooklyn City Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before CLEMENT, C. J., and OSBORNE, J.

Morris & Whitehouse, for appellant.

Thos. E. Pearsall, for respondent.

OSBORNE, J.　Plaintiff brought this action, as administratrix of her son, Philip J. Byrne, to recover damages from the defendant for having negligently caused his death.　She obtained a verdict in her favor for $2,000, and defendant appeals.

In and previous to the month of May last, defendant was engaged in the construction of a large power house on First avenue, in this city, extending from Fifty-Second to Fifty-Third streets. Prior to May 23d, the cellar had been excavated some 20 to 25 feet, and the foundation walls along the First avenue side had been built up, with the exception of an opening in the wall about 15 feet wide at the base, and widening on each side, after the manner of steps, till it reached the top of the wall.　Outside of this was a bank some 15 feet high, extending up to the street level.　Plaintiff put in evidence tending to show that this bank was negligently constructed or graded, in that it had a slope of but 5 to 6 feet, while defendant offered evidence to show that this bank had a slope of from 15 to 16 feet.　It was further shown that the floor of the cellar in front of this First avenue foundation wall had been concreted for a distance of some 8 or 10 feet or more back from the wall, including the space in front of the opening.　On or in the face of this bank, and opposite the opening, was a large boulder, some 4 or 5 feet wide one way and 3 feet the other way, and about 2 feet thick, and weighing upwards of 2 tons.　About one-third of this boulder protruded from the face of the bank.　Plaintiff's witnesses testified that the bottom of this boulder was about 4 feet above the level of the cellar floor, while it was testified on behalf of the defendant that it was only from 9 to 12 inches above the cellar floor.　On May 23d the deceased was, for the first time, employed on the work.　He commenced work at half-past 8 o'clock in the morning.　Until about 11 o'clock, he was pounding down the earth used for filling in between the foundation wall and the bank. Then he was put to work shoveling sand about the middle of the cellar.　Plaintiff's evidence went to show that a considerable quantity of earth had from time to time, previous to the day in question, fallen from this bank through the opening in the wall onto the cellar floor, so that it extended out some 8 or 10 feet on the floor; that, between 2 and 3 o'clock in the afternoon, deceased and two other men were sent to shovel away this accumulation of earth; that while deceased was so engaged, and after working there about three-quarters of an hour, and when standing some 5 feet back from where the boulder was, the earth or sand supporting the boulder suddenly gave way, and the boulder was precipitated onto the deceased, and caused his death.　On the part of the defense, the evidence was to the effect that the deceased and two other men were sent to dig out a trench in the above-mentioned opening, on the line of the wall already constructed, for the purpose of laying a cement foundation on which to build up the continuation of the foundation wall across the opening, and that, while so engaged in the trench with his fellow workmen, the boulder was caused to fall, by reason of the excavating that they were engaged in.

The learned trial judge charged the jury that, if the contention

of the defendant that the bank had a slope of 15 to 17 feet was proven, such a "slope, according to the testimony in this case, was sufficient, or was the exercise of reasonable diligence in that respect, notwithstanding that it fell down." At the request of defendant's counsel the learned judge further charged the jury "that, if the decedent was engaged in digging the trench between the walls at the time of the accident, the plaintiff cannot recover." The jury having found a verdict in favor of the plaintiff, we may fairly assume that they found, on the evidence, that the slope of the bank was insufficient, and also that decedent was not engaged in digging the trench, but was at work shoveling away the earth that had accumulated on the cellar floor through the opening in the wall, at the time he met his death. The learned counsel for the defendant contends on this appeal that decedent's death was due only to the negligence of his fellow servants; that the master's duty to furnish a safe place for his servant to work does not apply to a case like this, because it was the digging—the carrying out of the work itself— that created the danger; and that the situation was created by the men employed in the work. We do not think that this contention can be maintained. Here was a case where decedent had acquired no previous experience in works of a similar character, nor had he had any opportunity to acquire any knowledge of his surroundings, for he met his death on the very day that he went to work at this place. If the deceased had been digging in the trench at the time, and he or his fellow workmen had so ignorantly or carelessly excavated as to cause the boulder to fall, then there might be some ground for the position claimed by the learned counsel for the defendant; but, as before stated, the jury, by their verdict, have found that decedent was not digging in the trench. He was simply directed to shovel away the earth that had accumulated on the cellar floor. There was no risk, obvious to him, that this boulder was liable to fall on him while at work some five feet back from it; and he was justified in assuming that his employer had discharged its duty, in providing a reasonably safe place for him to do the work assigned to him. That the place where decedent was put to work was unsafe, the fall of the boulder clearly demonstrated. That the boulder fell by reason of the negligent manner in which the embankment had been graded,—by reason of its insufficient slope,—is demonstrated by the verdict of the jury under the instruction of the learned trial judge. It is well settled that the duty of the master to furnish his servant with a reasonably safe place to work in is one which the master himself is bound to perform, and he cannot excuse himself from this duty by delegating it to another. It was the duty of the defendant to see that the place where deceased was put to work was not only reasonably safe, in the first instance; but it was also the further duty of the defendant to exercise proper acts of care, from time to time, to see that the place continued safe. The very fact that portions of this embankment had from time to time fallen through this opening in the wall onto the cellar floor should have arrested the attention of the defendant, and caused it to take proper precautions to prevent the

fall of this protruding boulder. The cases of Kranz v. Railway Co., 123 N. Y. 1, 25 N. E. 206, and of Doyle v. Baird, (Com. Pl. N. Y.) 6 N. Y. Supp. 517, both of which related to injuries sustained in excavations, amply support our views. The judgment and order denying motion for new trial should be affirmed, with costs.