Henrietta Durst, Appellant, *v.* Carnegie Steel Co., Limited.

*Negligence—Master and servant—Risk of employment—Fellow servants —Vice principal.*

When danger can only arise as work progresses and be caused by the work done, the employer is not bound to stand by during the progress of the work to see when the danger arises. It is sufficient if he provides against such danger as may possibly or probably arise, and gives the workmen the means of protecting themselves. It is then the duty of the workmen to look out for such dangers, and use the means provided.

A workman was employed to make excavations, and worked together with others in a gang under a foreman. The employers had furnished all the materials for shoring up the sides of the excavations and competent workmen to put them in place, and the foreman instructed to call upon the superintendent or carpenters whenever any danger appeared. In the progress of the work the side of the cut fell in and the workman was injured. After the embankment had fallen, a sewer pipe was exposed. The engineer of the defendant had a diagram showing the location of this pipe, but the superintendent in general charge of the work, and defendant's vice principal, had no knowledge of it. Plaintiff's foreman, however, had actual knowledge of its existence before the accident occurred, but he did not communicate it to the superintendent. There was no evidence, however, that the accident was caused by the presence of the sewer, and it did not appear that there was indication of weakness due to the sewer before the accident occurred. *Held*, that a nonsuit was properly entered.

Argued Nov. 6, 1895. Appeal, No. 253, Oct. T., 1895, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March T., 1894, No. 570, entering nonsuit. Before GREEN, WILLIAMS. McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SLAGLE, J.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off, filing the following opinion by which the facts appear:

This was an action to recover damages from the death of Andrew Durst, the husband of plaintiff, who was an employee of defendants, and lost his life by the fall of an embankment of earth into a ditch, which he was engaged with others in digging on the 18th of October, 1893.

The defendants were engaged in making an excavation for new buildings at their works at Homestead. The excavation was to be about fifty feet square and fifteen feet deep. The plan adopted was to dig a trench eight feet wide around the outside of the full depth, and afterward remove the core. The purpose of this was to provide means for bracing the sides in case of necessity. The work was laid out by the engineer, and its execution was under the direction of John Molamphy, superintendent of labor. A considerable amount of work had been done on the southern and eastern side, and perhaps some, but not much on the northern and western. The work was being prosecuted at night as well as by day. The deceased was engaged on the night gang, and had been at work three or four nights. He was not an ordinary laborer, but was so employed in absence of work at his usual employment.

A great many excavations had been made in this ground, which was the site of the City Poor Farm which had been purchased from the city of Pittsburg, some of them to a greater depth than fifteen feet. The ground was generally clay or shale with a layer of sand at the depth of about eleven feet. It was generally found necessary to shore the sides of the cut and brace them upon reaching the sand; and in some instances before doing so. An ample supply of plank and braces was provided, and on the ground, ready for use when necessary. Carpenters were within call, charged with the duty of putting the braces in place.

Each gang of men was in charge of a foreman who superintended the work. They were instructed to call on Mr. Molamphy or the carpenters whenever bracing was needed in daytime or at night. When the day turn went off duty on the day of the accident, about six o'clock, the eastern trench was about six or seven feet deep. About this time Mr. Molamphy and the boss carpenter were there and decided that it was not necessary to brace at that time. The night gang went to work and about eleven o'clock they had reached a depth of ten or eleven feet in the eastern trench, when a portion of the inner wall fell, resulting in the death of Durst and the serious injury of another workman. It did not clearly appear whether or not they had at that time reached the sand, though it is possible they had not.

It was further shown that there was a considerable number of sewers and pipes in this ground, which had been used for the poorhouse. The engineer of the defendant company had procured a diagram showing the location of these pipes, but it did not appear whether he had shown it to any other official. They, however, knew that these pipes were there, having encountered them in other excavations, and Mr. Molamphy had given instructions to the foreman that no pipe which might be discovered should be cut until it had been examined specially with reference to its use. During the afternoon of October 18, 1893, a pipe sewer was discovered crossing the southern trench, and running north and south through the core parallel with the eastern trench and about eighteen inches to two feet from the side of the cut, and about six or seven feet below the surface. After the embankment had fallen away this pipe was exposed. This was known to the foreman of the day gang but he did not inform Mr. Molamphy of the fact. It further appeared that the ground in this trench was hard clay or shale.

This we think is a full and fair statement of the case as shown by the testimony. There was no evidence as to any difficulty caused by sewers in other excavations nor that by the nature of the ground there was any apparent danger from the proximity of this sewer to the cut—nor any indication of danger from any source which would have been discovered by proper care, so that plaintiff's case depended solely on the fact that the sewer was close to the cut, that the defendants knew or should have known that it was there and should have provided against it. Upon motion a compulsory nonsuit was granted. Upon motion to take off nonsuit, counsel for plaintiff have furnished us with an admirable brief referring to all the important cases upon this subject, but after a full consideration of these cases and the able argument of counsel, we are of the opinion that the court did not err in entering the nonsuit. The principles of the law governing such cases are well established-—the difficulty arises in their application to particular cases.

An employee assumes all the ordinary risks of the business in which he may be employed. This includes accidents caused by the negligence of coemployees. But the master owes certain duties to the employee, and among these is to furnish a reasonably safe place to work, and to notify the employee of any latent

danger of which the employer has knowledge, or with reasonable care would know. These duties cannot be avoided. If the master intrusts them to another, the latter becomes a vice principal and the master is liable for any neglect by him in performance of the duties imposed by law upon the principal. It does not matter how many intermediates there may be, the person to whom the duty is committed is such vice principal.

In this case the duty was intrusted to John Molamphy, superintendent of labor, who had charge of all excavations. The company was therefore responsible for any neglect by him to perform the duty imposed by law upon them. It is contended that Patterson and McMillan, who were foremen of the gangs engaged at this work, were charged with the duty of protecting it in absence of Molamphy, and were therefore vice principals for the time being. We do not so understand it. They were mere foremen in charge of the men, supervising and directing their labor. Under all the cases they were coemployees with the men under their charge: N. Y. & L. E. R. R. Co. v. Bell, 112 Pa. 400; Reese v. Biddle, 112 Pa. 72, and cases there cited. We do not understand that Molamphy turned over any of his duties to them, but merely instructed them in cases of necessity to call him or the carpenter to provide against danger.

There was no evidence to show contributory negligence on part of deceased. The only question, therefore, is whether there was evidence of neglect on part of Molamphy to perform any of the duties imposed by law upon the defendants.

The duty which it is alleged was neglected is that of furnishing a reasonably safe place to work.

It will be observed that the place as it stood when the work commenced was perfectly safe. The danger could only arise as the work progressed and be caused by the work done. In such a case we do not think it is the duty of the employer to stand by during the progress of the work to see when a danger arises. It is sufficient if he provides against such dangers as may possibly or probably arise and to give the workmen the means of protecting themselves. They should look out for such dangers and use the means provided: McKinzie v. Philadelphia, 46 Leg. Int. 506; Mansfield Coal and Coke Company v. McEnery, 91 Pa. 185; Walton v. Bryn Mawr Hotel Company, 160 Pa. 3. In this case the defendants had furnished all

the materials for shoring and competent workmen to put them in place, and foremen who were instructed to call upon the superintendent or carpenters whenever any danger appeared. But it is said that the accident in this case occurred because of the proximity of a sewer to the place of working; that this was known to the company or ought to have been known, before the deceased went to work that evening. That the location of the sewer and its relation to this trench might have been known by using the plot in the possession of the engineer, and making accurate surveys of the ground, is certain. It is possible that it might have been known from the course of sewers struck in other excavations, but it does not appear to have been actually known to Mr. Molamphy, the superintendent. It was known to McMillan, one of the foremen, but he did not tell Mr. Molamphy. But with all this, plaintiff's case fails in proof that a failure to ascertain the exact location of this sewer and to know that it had been struck that afternoon was negligence of duty on part of the company. There is no evidence that the existence of sewers in the ground was in itself an element of danger and rendered excavations unsafe. That would depend on the size and character of the sewer and nature of the ground.

The evidence does not show that the accident was caused by the presence of the sewer. There was no evidence that there was any indication of weakness before the accident happened, presumably there was not, or the foreman would have ordered the shoring. There was no evidence of the condition of the ground afterwards; whether it fell from the top only or from under the sewer as well. So that the fact that the accident was caused by the sewer would only be an inference, from the fact that after the fall it was exposed. In other words it would be to infer negligence from the happening of the accident merely: Heating Co. v. Rohan, 118 Pa. 223; Railroad Co. v. Hughes, 119 Pa. 301.

But an employer is not an insurer. In such a case he is only bound to reasonable care. He is not bound to provide against danger that an ordinarily prudent man would not anticipate. To hold defendants responsible, the evidence should show that the sewers presented a dangerous obstruction to excavation, and that any ordinary skilled and prudent man would have known it. As before said, this would depend on the size and

character of the sewer, and the nature of the ground, and could only be ascertained in the progress of the work. There was no evidence in the case upon this subject, and the testimony as to the nature of the ground would tend to show that no such danger would be apprehended. So that in order to convict defendants of negligence, it would be necessary to infer, from the mere happening of the accident, that it was caused by the sewer, and that the danger was apparent and was known or should have been known to the defendants. Unless this last fact is found, then the duty of notification would not arise. Defendants of course could not be required to notify an employee of a danger they did not apprehend or have reason to apprehend.

But aside from this we do not think it is incumbent on an employer to see every person employed. When men are employed in gangs, it ought to be sufficient to notify their foreman. The foreman knew as much of these sewers as the defendants, and McMillan knew of this one.

*Error assigned* was refusing to take off nonsuit.

*D. R. Jones, L. L. Davis* with him, for appellant.—Probable injuries should be guarded against: Pittsburg v. Grier, 22 Pa. 54; Gas Co. v. Robinson, 99 Pa. 1.

The question of whether or not, under the circumstances of this case, there was a duty on the employers to brace the trench, was one for the jury, and the nonsuit should have been taken off: Company v. Orr, 83 Pa. 332; Schilling v. Abernethy, 112 Pa. 437; R. R. v. Barnett, 59 Pa. 259; McCully v. Clark & Thaw, 40 Pa. 399; R. R. v. Doak, 52 Pa. 379; Allen v. Willard, 57 Pa. 374; R. R. v. McElwee, 67 Pa. 311; McKee v. Bidwell, 74 Pa. 218; Canal Co. v. Goldstein, 23 W. N. C. 496; R. R. v. Coon, 111 Pa. 430; Christian v. R. R., 141 Pa. 613; Hays v. Miller, 70 N. Y. 112; Hart v. Bridge Co., 60 N. Y. 602.

The question whether or not, from the circumstances of this case, it became the duty of the master to warn the deceased employee of the sewer, was one for the jury: Rummel v. Dilworth, 131 Pa. 509; Wagner v. Jayne Chemical Co., 147 Pa. 475; Lebbering v. Wells & Co., 157 Pa. 312; Brennan v. Gordon, 118 N. Y. 489.

The negligence was that of a vice principal: Andesco v. Oil

Co., 63 Pa. 146 ; Hays v. Millar, 77 Pa. 238; Vanesse v. Coal Co., 159 Pa. 405.

Under the circumstances of this case, the day foreman, McMillan, and the night foreman, Patterson, were vice principals, and, even if it was their negligence, or that of either of them, the appellee is liable: R. R. v. Mason, 109 Pa. 296; R. R. v. Leslie, 109 Pa. 296; Tissue v. B. & O. R. R., 112 Pa. 91; Lewis v. Seifert, 116 Pa. 628; Mullan v. Steamship, 78 Pa. 25 ; R. R. v. Bell, 112 Pa. 400 ; Trainor v. R. R., 137 Pa. 148 ; Pautzar v. Mining Co., 99 N. Y. 368.

If there is any conflict or doubt as to whether or not the foreman in this case was a vice principal, the question is for the jury : Evilhock v. R. R., 36 W. N. C. 568; Mullan v. Steamship Co., 78 Pa. 25.

*P. C. Knox* and *James H. Reed, Gibson D. Packer* and *Edwin W. Smith,* for appellee were not heard, but argued in their printed brief.—Every workman takes the risk of his employment, and if the danger increases in the progress of the work, that is a risk of the employment : McKenzie v. Philadelphia, 46 Leg. Int. 506 ; Walton v. Bryn Mawr Hotel Co., 160 Pa. 3 ; Mansfield Coal etc. v. McEnery, 91 Pa. 185 ; Sykes v. Packer, 99 Pa. 465 ; Priestly v. Fowler, 3 Meeson & Welsby 1 ; Hall v. Johnson, 3 H. & C. 589 ; Olson v. McMullen, 34 Minn. 95 ; Ramussen v. Chicago etc. Ry., 65 Iowa, 236 ; Anderson v. Winston et al., 31 Fed. Rep. 528.

There is no negligence on the part of the defendant shown : Heating Co. v. Rohan, 118 Pa. 223 ; Pa. R. R. v. Coon, 111 Pa. 430 ; Schum v. R. R. R., 107 Pa. 8.

Per Curiam, January 6, 1896 :

The opinion of the learned court below on the motion to take off the nonsuit is so full, clear and convincing, that for the reasons there stated, and upon the authorities cited, we affirm the judgment in this case.