SWIFT & CO. v. GROFF et al.

(Circuit Court, D. Minnesota, Third Division. February 12, 1902.)

UNFAIR COMPETITION—USE OF TRADE-NAMES—"SWIFT."

    The word "Swift," adopted and long used by Swift & Co., meat packers, etc., as a name for the various products of the company, has become known to the public as denoting the origin of such products; and the company is entitled to an injunction, on the ground of unfair competition, to restrain a manufacturer of like products from designating them by such name, where there is no apparent reason or appropriateness in such use, but it appears, rather, to have been adopted for the purpose of deceiving purchasers.[1]

In Equity. Suit to restrain unfair competition in trade. On motion for preliminary injunction.

Bond, Adams, Pickard & Jackson, for complainant.
John W. Willis and John E. Stryker, for defendants.

LOCHREN, District Judge (orally). The law recognizes that where a manufacturer has acquired popularity for his manufactured articles by reason of their excellence and satisfaction to purchasers, and has adopted a name by which they are designated, so as to refer to the origin of the articles of the manufacturer, he has such property in the name so adopted that no other person will be allowed to pirate it and use it for his advantage, and to the detriment of the person originally using the name to designate his own manufacture. This is so for the reason, first, that it is an injury to the person who has got a good name for his articles to deprive him of that advantage by deceiving persons who desire to buy articles of him, thus causing to him the loss of the sale of the articles; and also because it is a fraud upon the purchaser, who is prevented in that way from purchasing the articles he may desire to purchase. Now it is true, as stated by counsel, that nobody can adopt as a trade-mark or acquire a monopoly of a family name, so as to prevent another person to whom that name appertains from using it as his own name and marking his goods with it, if he does so in a way which is not calculated to represent them as the goods of another. But there may be some restriction on the use of one's own name, and he cannot use it in connection with other words in such a way that it will be likely to mislead intending purchasers, and cause them to purchase goods of his manufacture, mistakingly, as the goods for another person of the same name, who has an established reputation for his goods, and whose goods are desired by the purchaser. In this case it appears that the complainants adopted the name "Swift" for their various products, and that was the name of the person who originated the Swift Company, and properly used his own name to designate the various marketable products that were produced in the business of the company,—meats, mainly, but also such other articles as came

    [1] Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper, 30 C. C. A. 376.

from the stock yard and slaughtering business as well. Among other things, they have used it for articles which they call "stock food" and "poultry food." They have never manufactured nor placed their trade-mark on the other articles which are stated here to have been manufactured by the defendants. Why the defendants adopted that name, or used the name "Swift" in their business, does not very satisfactorily appear. It appears that none of them were of that name. It is said that they used the name with reference to the rapidity or quickness with which the articles would operate; and while there might be some propriety or aptness with reference to some of these articles, such as lice killer and vermifuge or worm exterminator, it is difficult to see the aptness of applying it to lemon extract or lemon juice, or to the different kinds of food. It does not occur to me that there is any particular aptness in applying it to such articles. Its use in connection with the name adopted as the name of the company cannot have that particular idea connected with it; and it would seem that its use with reference to the articles would be to refer to their origin, or the place where they were manufactured, or to the persons who manufactured them. As far as defendant company is concerned, it does not seem to matter whether it was the name "Swift" or "Swift's," that was used. "Swift Packing Company" or "Swift's Union Stock Company" would not be particularly different from "Swift's Packing Company" or "Swift Union Stock Company." It would be still generally understood, I think, as taken from a proper name. And my impression is that, in the general apprehension, it would be so regarded in respect to these articles. "Swift" is not a very apt adjective to apply to any of them. The word goes further than "quick" or "rapid." It gives the idea of continuance of a very rapid motion. I am not impressed with the good faith of the use of that name in this case, and I am rather inclined to the impression that the name was used with the idea of taking advantage of the fact that the complainant company was a well-known company and largely engaged in business, and therefore it was an improper appropriation of the name of that concern. But I think there can be no complaint made where the name is used to designate goods that are not manufactured, or analogous to goods which are manufactured, by the complainant. The complainant does not make any lemon juice, or several of the other articles that are mentioned in the bill, and the complainant is not defrauded by the use of that name by the defendant, or by the sale of any such articles; and, as to the making of such articles, the public has no reason to expect that any articles that they buy of such kinds are the manufacture of the complainant.

I think that, as far as the stock food and poultry food are concerned, the writ of injunction should issue, and that as to the others it should not issue. An order may be drawn accordingly.