[No. 9642. Department Two. December 29, 1911.]

BESSIE IDA BLAIR et al., Respondents, v. THE CITY OF SPOKANE, Appellant.[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE METHODS. In an action for the death of a signalman through the fall of a wall, upon which he was directed to stand, the negligence of the city is for the jury, where there was evidence that the wall was unsafe, supports having been negligently removed without putting in proper braces.

SAME—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER. A signalman, injured by the fall of a wall upon which he was directed to stand in giving signals, is not guilty of contributory negligence from mere knowledge of the danger, it being for the jury to determine whether he used care commensurate therewith.

[1]Reported in 119 Pac. 839.

SAME—WARNING—QUESTION FOR JURY. Whether a servant was warned of the danger of the fall of a wall upon which he was directed to stand, is for the jury, where there was a conflict in the evidence as to two of the warnings, and the third warning was as to a danger that did not contribute in any way to the accident.

SAME — ASSUMPTION OF RISKS — OBVIOUS DANGERS — DEFECTIVE METHODS. A signalman directed to stand upon a wall does not assume the risks of negligence of the city in failing to adopt a reasonably safe method of doing the work, but only such as are obvious after the city has discharged its duty; and where the city engineer in charge of the work did not anticipate that the wall would fall, it cannot be said that the danger was obvious.

SAME—SAFE PLACE TO WORK—TAKING DOWN STRUCTURES—DUTY OF MASTER. In taking down an unsafe wall, the city owes the duty towards its employees to make the place as reasonably safe as the circumstances and character of the work will permit.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OBEDIENCE TO ORDERS. Where a signalman takes a position on a wall in obedience to the order of a foreman, it cannot be said that he was so reckless as to bar a recovery.

MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE PLANS. Where a city intended to retain a portion of a defective wall, which it was taking down, and such portion fell and killed an employee, in an action for the death, evidence of negligent construction under defective plans authorized by the city is admissible, the evidence justifying a finding that the collapse of the wall was due to the defective plans in the original construction.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered February 18, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the death of a laborer through the fall of a retaining wall. Affirmed.

*Cannon, Ferris, Swan & Lally* and *A. M. Craven,* for appellant.

*Nuzum & Nuzum* and *Geo. H. Armitage,* for respondents.

MORRIS, J.—Action by respondents to recover for the death of their husband and father, caused by the alleged negligence of the city. The accident in which the deceased met his death occurred August 25, 1910, through the fall of a

retaining wall and the slide of a fill on what is known as the Sprague avenue fill. This work had originally been done under contract; but because of the defective methods employed by the contractor, the city had repudiated the contract, and at the time of the accident, was taking out the fill and tearing down the wall in places in order to reconstruct on safer and better plans. The charge of negligence was,

"The said city of Spokane, defendant, acted carelessly and negligently in removing said rocks from the said fill, as aforesaid, carelessly and negligently removed the support from the side of the said fill, as aforesaid, carelessly and negligently failed to put in braces or supports while removing the rock from said fill."

In another paragraph, the original negligent construction was charged under faulty and insufficient plans, and the adoption of faulty plans in taking down the retaining wall and removing the fill. It will thus be seen that the negligence charged consisted in the original faulty plans and construction, and in the negligent methods employed in seeking to remedy the defects in the original construction.

Deceased was a signalman who stood upon the wall or on the fill within a few feet of the wall, to convey signals to the engineer who controlled the operation of the boom and skip that was being used to take the rock and earth from the fill and dump it outside the wall. All of this fill was not to be removed, but only so much of it as was deemed necessary in order to rebuild the wall, which was the main purpose in the reconstruction. This wall as originally constructed was built as a dry wall, stones and rocks being used without mortar, cement, or other binding force. It was five hundred feet long, thirty feet high, fifteen feet wide at the base, and two feet wide at the top. There was abundant evidence to justify a finding by the jury of all the phases of negligence charged in the complaint. It was also fairly established by the evidence that the wall, at the point where deceased either stood upon it, or within a few feet of it, was not to be taken down,

on account of a wing wall coming in at that point to support
a street crossing. It is also deducible from the evidence
that deceased was directed to stand where he did by his fore-
man, in order to be in the best possible position to give his
signals to the engineer, especially after dark, when his po-
sition was within the rays of an arc light where he could be
plainly seen and his signals readily comprehended. The ac-
cident happened at about 7:30 or 7:45 in the evening. This
was amply sufficient to establish the cause of action, unless
the right of recovery was lost by reason of the matters set
up in defense, which, in so far as the same are here urged,
are contributory negligence and assumption of risk. In sup-
port of these defenses it was sought to be shown that de-
ceased had full knowledge of the danger confronting him,
and that he had been repeatedly warned.

Upon the first point, it is sufficient to say that knowledge
of the danger does not of itself constitute contributory neg-
ligence in law, and that it is for the jury to say whether
knowing the danger the deceased used care and caution com-
mensurate with the danger. This doctrine has been so often
announced by this court that further citation is not now
necessary. As was said in *Cowie v. Seattle*, 22 Wash. 659,
62 Pac. 121, and reiterated in *Atherton v. Tacoma R. &
Motor Co.*, 30 Wash. 395, 71 Pac. 39:

"The law does not require the plaintiff in an action for
personal injuries to be absolutely free from any negligence
whatever in order to recover, for such a requirement would
impose upon him a duty of exercising extraordinary care and
prudence, which is not the standard by which his negligence
is measured. All the law requires of the plaintiff, in such
cases, is the exercise of ordinary care, under the circum-
stances surrounding him, and this he may do, although he
may be guilty of some slight negligence, in the broadest sense
of that term."

Upon the question of the deceased being warned as to the
danger, this, under the circumstances developed, was a ques-
tion of fact for the jury. Three instances are relied upon

by appellant. One was by a foreman named Jacobs, who testified he warned deceased of danger from the falling wall in the presence of the other foreman Shawgo. This conversation is denied by Shawgo. The second warning relied upon was from Stephenson, the superintendent of the work. Respondent produced a witness who testified that, on the morning of the accident, Stephenson's attention was called to a crack in the wall when a large rock rolled down the slope against it, and that Stephenson told them to keep on working, that the wall was in no danger of falling. The third warning was from the city engineer who says he asked Blair if he did not think he was in a dangerous position, standing with one foot on the wall and the other on the fill, and warned him to be careful of the wall as he didn't think it was very safe. He further testified that he did not think the wall was going to fall, that the principal danger he had in mind was the falling of large rocks weighing from five hundred to one thousand pounds from the top of the wall; but that, outside of the danger of falling rocks, he thought Blair was in a reasonably safe position, and that he did not anticipate the wall itself would fall; if he had he would not have allowed Blair to stand where he did. It will thus be seen that the jury could have found the first two warnings were not given, and that the third was of a danger which did not contribute in any way to the cause of Blair's death, and hence, if given, could not defeat a recovery, based upon a danger the witness himself says he did not anticipate.

As to the defense of assumption of risk, while it is true that an employee assumes all the dangers inherent in the work and that are ordinarily incident thereto, it does not follow that he assumes the risk of his employer's negligence. The risks assumed by the servant are those, and those only, that are obvious after the master has discharged the duty imposed upon him by law of using ordinary care and prudence in making the servant's work reasonably safe, and in providing him with a reasonably safe place in which to do that

work. This is the rule as announced by us in *Howland v. Standard Mill. & Logging Co.*, 50 Wash. 34, 96 Pac. 686, where it was said:

"But it is not the rule that a servant who goes into a dangerous situation assumes the risk of all dangers surrounding the place. He assumes those dangers only which are inherent in and which exist from the nature of the business—those dangers against which there is no absolute protection, not those caused by some negligent act of the master and which would not exist but for such negligent act."

Such is the oft-repeated announcement of the law in other jurisdictions. In *Curtis v. McNair*, 173 Mo. 270, 73 S. W. 167, it is said:

"It is the duty of the master to exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it. This duty the law imposes on the master and will not allow him to cast it off. It is contrary to public policy to allow the master to relieve himself by contract from liability for his own negligence. What the law forbids to be done by express contract, it will not assist to be done by implying a contract. A risk which the law, on the ground of public policy, will not allow the servant to assume, it will not imply from his conduct that he has assumed. . . . The servant never assumes the risk of the master's negligence."

So, in *American Window Glass Co. v. Noe*, 158 Fed. 777, the same rule is announced:

"Plaintiff undoubtedly assumed all the risks that naturally inhered in this extrahazardous work, but he did not assume the risk of its being made still more hazardous by defendant's negligence."

*Yongue v. St. Louis & S. F. R. Co.*, 133 Mo. App. 141, 112 S. W. 985, thus expresses the same thought:

"He [the servant] only assumes such risks as are incident to his job after his employer has fulfilled the primary duty of using care to furnish proper working places and appliances."

Many other cases might be cited to the same effect. The above, however, are sufficient to show the rule properly applicable to the situation confronting us, which, as applied to this case, means that, while Blair could be said to have assumed the obvious risks incident to the situation in which he was placed, he did not assume the negligence of the city in failing to adopt a reasonably safe method with which to do the work, nor in making his place of work extrahazardous in failing to use a reasonably safe plan to dismantle this wall, or to make such slopes in taking out the fill as would add unnecessary and extra hazards to the work. It was the duty of the city in doing this work, confessedly dangerous and attendant with many risks, to do it in such a way as to reduce the danger to a minimum, and not increase it by careless and negligent methods of operation. That it did so increase the danger and add to the risk by faulty and negligent methods, is abundantly established by the evidence.

Again, the deceased met his death because of the falling wall. It would hardly be a just inference to say this was a plain and obvious danger, when the city engineer who knew more about the strength of this wall and the probability of its falling says he anticipated no danger from its fall, nor did he observe any indications that it would fall. The fall of the wall could hardly then be said to be so apparent that the ordinary workman unskilled in matters of this kind would have anticipated it. If it was not obvious to the engineer in charge, it could hardly be said to be obvious to the deceased.

The next contention is that the doctrine of "reasonably safe place" does not apply. It is probably true that, when men are engaged in making a dangerous place safe, the obligation of the master to provide his servant with a reasonably safe place in which to do his work does not apply with all the force that it does in situations where the danger is not so imminent. This only means, however, that the rule is limited in its application. It does not call for its abrogation. Wherever men are engaged in employment, the law

imposes the duty upon the master to make the place as reasonably safe as the circumstances surrounding the place and the character of the work will admit. The master must take some precaution for the safety of his employees. He will not be permitted to say, "This work is known to be dangerous and I am therefore absolved from any legal requirement as to protecting the safety of my employees." The duty is not lessened because, notwithstanding its exercise, the danger remains. The law requires the master shall make the effort, and he cannot be absolved until he does. Having performed this duty as an ordinarily prudent man under the same circumstances would have performed it, he has done his full duty, and his employee then assumes the inherent danger incident to that which he undertakes to do. This feature of the case is so interwoven with the point we have previously discussed that it may be said to rest upon the same legal principle, and that is, the servant does not assume the negligence of the master.

"While it is true that a servant employed to make a dangerous place safe assumes the risk of the very danger which he undertakes to remove, he does not assume the risk of the method employed in doing such dangerous work if that method is unnecessarily hazardous in respects as to which the employee has no knowledge, provided that in these respects the employment could have been rendered less hazardous by the exercise of reasonable care on the part of the employer." *Clark v. Johnson County Tel. Co.*, 146 Iowa 428, 123 N. W. 327.

See, also, *Jacobson v. Hobart Iron Co.*, 103 Minn. 319, 114 N. W. 951; *Wolf v. Great Northern R. Co.*, 72 Minn. 435, 75 N. W. 702; *Bradley v. Chicago, M. & St. P. R. Co.*, 138 Mo. 393, 39 S. W. 763; *Byrne v. Brooklyn City R. Co.*, 6 Misc. Rep. 441, 27 N. Y. Supp. 126; *Norton Coal Co. v. Murphy*, 108 Va. 528, 62 S. E. 268; *Hough v. Railway Co.*, 100 U. S. 213; *Hawley v. Chicago, B. & Q. R. Co.*, 133 Fed. 150; *Liedke v. Moran Bros. Co.*, 43 Wash. 428, 86 Pac. 646, 117 Am. St. 1058; *Etheridge v. Gordon Con-*

*struction Co.*, 62 Wash. 256, 113 Pac. 639; *McLeod v. Chicago, M. & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749.

We have heretofore referred to the fact that the deceased was placed in the position he occupied at the time of the accident by his foreman Shawgo. Under these circumstances, it might well be said, as in *Withiam v. Tenino Stone Quarries*, 48 Wash. 127, 92 Pac. 900, it is reasonable to assume that neither the deceased nor his foreman deemed such a position overhazardous at the time, nor that the danger of such a position was so absolute or imminent that injury must almost necessarily have resulted. Under such circumstances, the master cannot be heard to say that the position deceased was instructed to take was so foolhardy and reckless that he should have refused to obey the instructions of his foreman, and his failure to do so bars a recovery. Such is not the law in this state, as announced in the cases written by us, as cited in the *Withiam* case.

Much is said in appellant's brief concerning the error in admitting evidence of the negligent construction of this wall and fill, and of the instructions of the court in submitting it to the jury. This was not error, in view of the evidence that it was the intention of the city to retain the wall at the point where deceased was standing. Such intention was in itself an assertion that the wall was reasonably safe for the purpose for which it was intended. It further appeared that the plans for the construction were authorized by the city. Such being the case, the city could not escape liability when the evidence justified a finding that the collapse of the wall was due to defective plans in the original construction. Such was the holding in *Potter v. Spokane*, 63 Wash. 267, 115 Pac. 176, in speaking of this same fill with reference to the damage to abutting property.

What we have said disposes of all the errors suggested by appellant, both in the matter of the admission of improper evidence and in the giving and refusal of instructions. It will not be necessary, therefore, to make a more specific ref-

erence to them. Finding no merit in any of appellant's assignments of error, the judgment is affirmed.

Dunbar, C. J., Ellis, Crow, and Chadwick, JJ., concur.