## CHICAGO, R. I. & P. RY. CO. v. TOWNES.

No. 3471.   Opinion Filed October 13, 1914.

(143 Pac. 680.)

1.   MASTER AND SERVANT—Safe Place to Work—Duty of Master. It is the duty of the master to use ordinary care to provide the servant with a reasonably safe place to work and to maintain it in a reasonably safe condition during the employment.

2.   SAME—Injury to Servant—Safe Place to Work—Sufficiency of Evidence—Assumption of Risk. Where plaintiff and another were put to work making cattle guards between the south wall of defendant's planing mill and north of its switch track, a space about 70 or 80 feet long and twenty feet wide on the east and about twelve feet wide on the west, and where in doing such work they were given a frame resting on carpenter horses about 30 inches high, around and across which to make said guards, and where, pursuant to orders of defendant company, they had so made and stacked from west to east in said space such a number of said guards as to fill the space all but a strip of ground twelve feet long and five feet wide between the guards thus stacked and a pile of lumber on the east of said space, and where the rubbish made in doing the work, consisting, among other things, of three-cornered blocks, was allowed to accumulate to such an extent that both guards and rubbish were in the way and interfered with the work, and where, on complaint to him, the foreman promised plaintiff to ship out the guards and clean up the rubbish, and where, pursuant to directions received at the time of complaint made, plaintiff continued at work, and while attempting to remove a guard from the frame, in order to pile it by the switch track, as ordered, and while lifting it from the frame, was compelled to walk backwards to

enable the helper, lifting on the other side of the guard, to pass through the frame, which he did, and while walking backwards stepped upon one of the blocks which turned his ankle, whereupon he fell and was injured, *held*, that the evidence was sufficient to take the question to the jury of whether defendant had used ordinary care to furnish plaintiff a reasonably safe place in which to work and to keep it so. *Held*, further, that as plaintiff was not employed in making a reasonably safe place dangerous or an obviously dangerous place safe, he was not charged with the duty to care for the safety of the place in which he had to work, and hence was not injured by a risk incident to his employment as a matter of law.

3. **APPEAL AND ERROR**—Review—Instructions—Harmless Error. Where, after complaint, the master does nothing to make the working place of the servant safe, it is not reversible error for the court to charge: ''If the place in which plaintiff had to work was not a reasonably safe place to work, then it was the duty of defendant to make it reasonably safe''—the same being upon an abstract proposition of law.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County;*
*Chas. B. Wilson, Jr., Judge.*

Action by W. T. Townes against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error, Affirmed.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *K. W. Shartel,* for plaintiff in error.

*W. M. Engart, M. L. McKinzie,* and *H. H. Smith,* for defendant in error.

TURNER, J.   On August 17, 1911, W. T. Townes, defendant in error, in the district court of Pottawatomie county, sued plaintiff in error, Chicago, Rock Island & Pacific Railway Company, in damages for personal injuries. After demurrer to the amended petition was filed and overruled, defendant answered, in effect a general denial, and pleaded contributory negligence and assumption of risk. After reply, in effect a general denial of all the facts set forth in the defenses pleaded, there was trial to a jury, and judgment for plaintiff for $5,000, and defendant brings the case here. It is assigned that the court erred in overruling a general demurrer to the petition and a demurrer to

plaintiff's evidence. The allegations of the petition are. supported by the proof. There is no dispute as to the facts. The evidence discloses that on November 3, 1909, and for some time prior thereto, plaintiff was in the employ of the defendant as a carpenter in its shops and yards at Shawnee, and while so employed received the injury complained of; that on said day, plaintiff and one Cunningham, another employee, were detailed by defendant's foreman to make cattle guards; that the place in which they were to be made was designated by the foreman, who ordered that, when made, they be stacked by them in the same place; that said place was a space between the south wall of defendant's planing mill and north of its switch track; that the same was about 70 or 80 feet long and twenty feet wide on the east and about twelve feet wide on the west end; that among the appliances furnished plaintiff and Cunningham with which to work was an open frame around which to make the guards; that the same was made of two by six timbers, the guards being built around and across said frame, which rested on two carpenter horses 30 inches high. The guards, when made, being four by eight feet, weighed 200 pounds. The evidence further disclosed that up to November 6, 1909, plaintiff and Cunningham had made and stacked from west to east, in the space indicated, about 200 cattle guards which, placed as directed, filled said space to within a few feet of a stack of lumber across the east end thereof, thereby causing their working place to be reduced to a strip twelve feet long and five feet wide, and so narrow that in getting a guard, when completed, out of the frame in order to carry it away and stack it, it was necessary for plaintiff, who worked at the frame with his back to the south, to lift his end of the guard high and walk backwards to enable Cunningham, who worked on the other side of the frame, to lift his end out of the frame and step over and walk forward through the frame. The evidence further discloses that in making the guards it was necessary to saw off the ends of certain timbers, which would drop to the ground in the shape of small three-cornered blocks, and to make much other rubbish; that it was the duty of the "bull gang" to remove this rubbish and for the foreman, Bell, to remove the finished

guards; that both rubbish and guards were allowed to accumulate at the time of the injury complained of, and to such an extent as to be in the way and interfere with the work of plaintiff and his helper in making the guards, as stated; that early in the morning of the injury plaintiff reported this condition, and that he was "blocked" and "too crowded," to defendant's general foreman, who inspected their working place and, after promising plaintiff that the guards would be loaded and the rubbish cleared away, directed him and Cunningham to continue their work and take the guards when made from out the frame and place them by the side of the switch track, which they later attempted to do; that thereafter, about two hours, and while plaintiff and Cunningham were lifting a newly made guard out of the frame in order to place it as ordered, and while walking backwards, as plaintiff was compelled to do on account of the limited space in which he had to work, and among the rubbish, he stepped on one of said blocks, which turned his ankle, whereupon he fell with the guard upon him and was injured.

For the reason that the petition not only states facts sufficient to constitute a cause of action, but the evidence reasonably tends to prove one, the court was right in overruling both demurrers in question. There is no doubt of the rule governing this case, or difficulty in its application. 20 Am. & Eng. Enc. of Law, 55, says:

"In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty of providing them a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the service required, and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and is not one of the perils or risks assumed by a servant in his contract of employment.   *   *   *"

All the authorities agree that this duty is a continuing one on the part of the master, who is required to see to it from time to time as the work progresses, and not permit the servant to work himself into a dangerous place, owing to limited space or

accumulated entanglement on the floor, calculated to trip him and cause him to fall and be injured when heavily burdened. The trial court, in considering a demurrer to the evidence, when the evidence reasonably tends to prove that the injury was sustained by reason of the place becoming unsafe in which the servant was required to work, and that the diligence exercised by the master in making and keeping it reasonably safe was not such that a reasonably prudent man would exercise under like circumstances, can of right do nothing but send the case to the jury on the question of the master's negligence, as was done here.

In *Union Pac. Ry. Co. v. Jarvi*, 53 Fed. 65, 3 C. C. A. 433, Sanborn, C. J., said:

"It is the duty of the employer to exercise ordinary care to provide a reasonably safe place in which his employee may perform his service. It is his duty to use diligence to keep this place in a reasonably safe condition so that his servant may not be exposed to unnecessary and unreasonable risks. The care and diligence required of the master is such as a reasonably prudent man would exercise under like circumstances in order to protect his servants from injury. It must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case."

In *Byrne, Adm'x, v. Brooklyn City R. R. Co.*, 6 Misc. Rep. 441, 27 N. Y. Supp. 126, it is said:

"It is the duty of a master, not only to see that the place where the servant is to work is reasonably safe in the first instance, but also to exercise proper acts of care, from time to time, to see that it continues safe."

And in *Armour et al. v. Golkowska*, 202 Ill. 144, 66 N. E. 1037:

"The duty of the master to provide a reasonably safe place for the servant to work is a positive one, and his noncompliance therewith is not one of the ordinary risks assumed by the servant."

And in *Nall, Adm'x, v. Louisville, etc., Ry. Co.*, 129 Ind. 260, 28 N. E. 183, 611:

"The master's duty to his employees to provide safe places for them to work is a continuing one, and requires him to use ordinary care to keep them safe, and if they become unsafe

through his neglect, or are made unsafe through his act, he must answer in damages to a servant who is injured thereby, who is himself free from contributory negligence."

As the risk of negligence of the master in failing to use ordinary care to keep the place in which plaintiff had to work reasonably safe was not a risk assumed by the plaintiff, and, as there is no evidence of contributory negligence upon his part, we need not consider the charge of the court concerning those defenses, as they are not involved in this case.

But it is urged, by counsel for defendant, the trial court should have sustained the demurrer to the evidence and taken the question of negligence from the jury because, they say, the character of the work was manifestly such that it was the duty of plaintiff to look after the safety of his own working place, and the court should have so held as a matter of law. Not so, for the reason that plaintiff at the time he was injured was not employed in making a reasonably safe place dangerous or an obviously dangerous place safe, and hence the doctrine contended for by defendant has no application. *Sulsberger & Sons Co. v. Castleberry,* 40 Okla. 613, 139 Pac. 837. In *American Bridge Co. v. Seeds,* 114 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041, it is said:

"Where the work which the servants are employed to perform is to make a reasonably safe place dangerous, or an obviously dangerous place safe, the duty to care for the safety of the place is the servant's and not the master's."

Besides, the doctrine contended for never applies where, as here, the evidence is undisputed that the master had provided no means by which plaintiff could protect himself. In the syllabus of *Durst v. Carnegie Steel Co.,* 173 Pa. 162, 33 Atl. 1102, it is said:

"When danger can only arise as work progresses and be caused by work done, the employer is not bound to stand by during the progress of the work to see when the danger arises. It is sufficient if he provides against such danger as may possibly or probably arise, and gives the workmen the means of protecting themselves. It is then the duty of the workmen to look out for such dangers, and use the means provided."

See, also, *Schneider v. Philadelphia Quartz Co.,* 220 Pa. 548, 69 Atl. 1035.

But it is urged that the case should be reversed on account of errors in the instructions. Referring to the time of the injury, the court charged the jury:

"If the place in which plaintiff had to work was not a reasonably safe place to work, then it was the duty of defendant to make it reasonably safe."

Of course this was not the law, for, after complaint made, it was the duty of the master to exercise ordinary care only to make the place reasonably safe. But how can this error be other than harmless when it is admitted that, after complaint, the master exercised no care at all, and in fact did nothing to make the place safe? Had he done something and relied upon it and insisted that he had, after complaint, exercised ordinary care to furnish a reasonably safe place, and hence was not liable, this charge would perhaps have been reversible error. But he did nothing, and in doing nothing to make the place safe, exercised no care at all. This being true, it was immaterial whether, after complaint, he was charged with the duty of making the place absolutely safe, or was charged with the duty of exercising ordinary care only to make it reasonably safe, and, being immaterial, and upon an abstract proposition of law, the error was immaterial and harmless.

Finding no error in the record, the judgment is affirmed.

All the Justices concur.