## PROVISIONS AGAINST DANGERS ARISING AS WORK PROCEEDS.

[Circuit Court of Lucas County.]

WILLIAM ZAREMBSKI v. THE CINCINNATI, HAMILTON & DAYTON RAILROAD COMPANY.*

Decided, January 30, 1905.

*Negligence—Railway Company Employs Men to Remove Iron Ore by the Ton—Man Injured by Falling Mass of Ore—Company Not Liable.*

Z was one of a gang of laborers employed by the railway company to remove in wheelbarrows a large pile of iron ore. The men were paid by the ton, and the pay of the boss was taken out of the proceeds of the work and pro rated among the men. The boss, after endeavoring for some time to loosen a mass of frozen ore, abandoned the effort, and a short time thereafter the mass fell and Z was injured.

*Held*: That no liability on account of the accident attached to the company for which the work was being done.

HULL, J.; PARKER, J., and HAYNES, J., concur.

The plaintiff in error, who was the plaintiff below, brought his action against the railroad company to recover damages, which he claims he sustained on account of the negligence of the company. He complains that the company did not furnish him a safe place to work and was negligent in that regard, and that on account of that he was injured. He was employed upon the docks of the company as a common laborer, at the time of his injury, to shovel iron ore and wheel it to a place on the docks to be loaded into cars. He was injured by a frozen mass of iron ore weighing about eight or nine hundred pounds, some four feet long, and about a foot square, which had become fastened in the trestle over his head and lodged there. He was at work immediately under this trestle shoveling iron ore in March, 1903, and while at work there in the afternoon, about half-past four, this mass

* Affirmed by the Supreme Court, without report, Tuesday, October 3, 1905.

of ore fell and broke his leg and otherwise injured him. It is claimed that the railway company was negligent in permitting this piece of ore to be suspended in the way or lodged in this manner, on the trestle, so that it was in danger of falling upon the plaintiff, as it finally did fall.

At the close of the plaintiff's testimony, upon motion, a verdict was directed in favor of the defendant and judgment was entered upon the verdict, and it was to reverse this judgment that a petition in error was filed in this court. The court below held that the testimony did not tend to show any negligence on the part of the railroad company and the question is, substantially, whether the company failed in any respect or was negligent in any respect in the matter of leaving this iron ore, or in the matter of giving plaintiff a safe place to work.

Zarembski had been employed at this work since the December preceding his injury, which was in March, 1903. The ore on the docks had been taken off the vessels the summer and fall before and put onto small cars, dump cars, as they were called, and these were propelled up the trestles and the coal dumped off so that the ore fell down upon the dock and piled up in that way, until it extended up to the trestle, which was probably about twenty feet high at this point; and, during the winter, Zarembski and other men had been engaged in moving this ore, which had been so piled up, or stacked up, putting it on wheelbarrows and taking it away; so that it might be put into cars; they began at the bottom edge of the pile and kept moving it away, and the pile was thus gradually lowered. All of the ore had been moved away from under this trestle, except a very small pile, leaving this mass of frozen ore lodged in the trestle above, as I have said. About half-past four in the afternoon, Zarembski, with the other men of his particular gang, were directed by the gang boss, as he was called, to move that small pile of iron ore that was under this trestle to some other part of the dock; he had been working only a half an hour at this work when this mass of ore fell upon him and injured him.

The men were employed to move this iron ore and were paid for it by the ton; they were not working by the day but by the ton; and the gang boss, as he was called, a man by the name of Stump, was employed with the rest of the gang to do this work, and he received the same pay as the rest of the men; but instead of being paid directly for the work he did by the railroad company, when the other men were paid, his pay was taken out of what they were entitled to, was retained by the company, and he was paid with that money, so that the money that he received came really from the rest of the gang, *pro rata;* that is, it it was taken out of the compensation for moving this iron ore at so much a ton, his pay being secured in that way; but he was employed simply as one of the gang. He seems to have been a kind of a manager.

On the morning of the day that Zarembski was injured, sometime during the forenoon, the gang boss had his attention called to this mass of iron ore on the trestle by the men of another gang (this whole gang was divided into smaller gangs), and the boss went upon the trestle and endeavored to dislodge this piece of ore with a pick or bar of iron; and he testifies that he worked at this work a half an hour and was unable to dislodge it, and he left it and came down, and for some reason, about half-past four in the afternoon, it fell and injured the plaintiff.

The mass of frozen ore had been left on the trestle by the men who were at work and had been at work upon the dock, in doing their work of shoveling away this pile of ore under this part of the trestle, and it had been there some four or five weeks before this injury. The record is very brief; only three witnesses were called, the gang boss, one other man, and the plaintiff himself.

We are of the opinion that the action of the court was correct in directing a verdict. The gang boss, Stump, was employed in the way that I have suggested, and, in our opinion, he was, so far as the plaintiff was concerned, and the other men upon the dock, a fellow-servant and not a superior officer with power to bind the company by his negligence, if he was

negligent in this instance.   He came to the company with the rest of the gang, according to the testimony; he was simply their boss; he received the same pay as they did, and it may be said was their manager; he was not put in authority by the railroad company, except in so far as it acquiesced in his being appointed by the gang themselves as a gang boss, as they called him.   They were all working similar to independent contractors—they were doing work by the ton.   The railroad company was bound, undoubtedly, to furnish to these men a safe place to work—that rule is well established.   It was bound to use ordinary care to see that the docks were safe, that the machinery with which they did the work was safe; they were bound to use ordinary care in all those respects.   But the danger here was one that came from the very nature of the work and grew out of the performance of the work by the men themselves.   Here was a great pile of ore, running from the dock up to this trestle; they were gradually taking it away, shoveling it into wheelbarrows and wheeling it away; as they did their work, the ore was liable to fall upon them, if they took it away leaving a projection or overhanging mass of ore; and the men themselves left this mass there, one of the gangs— whether the gang that Zarembski worked with or not; the evidence perhaps discloses that he did not work at this particular pile before the day he was hurt; but the men themselves left this mass of iron ore upon the trestle above them and above the dock.   It was incident to and a result of the very work which they were doing; and, in our judgment, the railroad company was not legally required to see that the men performing the work that they were hired to do by the ton, left no mass of iron ore or piece of iron ore in a way that it might fall down upon some of them when they were at work. It is held by the authorities that where a danger arises from the work itself, that men are doing such as this was, that the master is not liable.   Upon this question we cite the case of *Durst* v. *Carnegie Steel Co.*, 33 Atlantic Rep., 1102 (173 Pa. St., 162).   The second and third paragraphs of the syllabus are as follows:

"2. When the only possible danger to an employe engaged in making an excavation is such as may arise during the progress of the work, the employer is not bound to stand by during the work and see if a danger arises, it being sufficient if he provide against such dangers as may possibly arise, and gives the workmen the means of protecting themselves.

"3. Injuries to a workman engaged in making an excavation through the falling of earth upon him are not shown to have resulted from the negligence of the employer by the fact that he knew that a sewer ran through the place where the excavation was to be made, and failed to warn the employe."

This case was affirmed upon the opinion of the trial judge. In the opinion published on page 1103, this is said:

"It will be observed that the place as it stood when the work commenced was perfectly safe. The danger could only arise as the work progressed, and be caused by the work done. In such a case we do not think it is the duty of the employer to stand by during the progress of the work to see when a danger arises. It is sufficient if he provide against such dangers as may possibly or probably arise, and gives the workmen the means of protecting themselves. They should look out for such dangers, and use the means provided."

Now in the case at bar dynamite was furnished by the company and men provided to explode it and break up pieces of ore like this, if called upon to do it by the men at work. If this gang boss, Stump, should be regarded as a foreman in the employ of the company, as such it would be difficult to say that he was guilty of negligence in any event, for the testimony shows, as I have said, that on the forenoon of that day he had endeavored to dislodge this piece of iron and worked for half an hour with tools, but was unable to do so. It would seem that a man of ordinary care would hardly anticipate, under the circumstances, that the piece of ore would fall during the day, and no explanation is given showing why it did fall; it was a fairly warm day in March, and it may have been melted or thawed and fallen on that account; but there is no testimony to show that that caused it to fall. There is no evidence that can be relied on that any cars were run upon this trestle during the day. Stump thought at first that there were, but afterwards he said he did not know anything about it; he did not see any go up there, and could not tell, therefore, what it was that

caused this mass of iron ore to fall on that afternoon. It is entirely unexplained in the record. For some reason it became dislodged about the middle of the afternoon and fell, and plaintiff was injured. But we are of the opinion that the gang boss is not to be regarded as a foreman of the railroad company, so as to bind the company by his negligence, if he was guilty of any negligence. It is well settled, of course, that an employer does not insure his men against all possible injury, and whatever dangers are naturally incident to the employment. The employe ordinarily assumes them; and that there was some danger in doing work of this kind is clear; Zarembski testified that he did not know that this mass of iron ore was lodged on the trestle; that he did not see it. But we do not think it was necessary to go into the doctrine of assumed risk to decide this case. For the reasons given the judgment of the court of common pleas will be affirmed.

*Harvey Scribner* and *Cornell Schreiber,* for plaintiff in error.
*Swayne, Hayes & Tyler,* for defendant in error.