# Barry *v.* Jones & Laughlin Steel Company, Appellant.

*Negligence—Master and servant—Safe place to work—Steel mill.*

1. It is not only the duty of a master to provide a safe place for his servant to work, but also to maintain it in a reasonably safe condition by inspection and repair. This is a direct, personal absolute obligation from which nothing but performance can relieve the master.

2. Where the recrement or "scull" of a steel mill falls in the operation of the converters on to the roof-shield, and it is the duty of the owner of the mill to keep the roof-shield clean of the scull so that it may not harden and fall on the vessel floor below where men are at work, and the owner fails to perform this duty, and an employee who was required by his work to be on the vessel floor is hit and injured by the falling "scull," the employer is liable for the injury sustained. In such a case the employee's injuries are not caused from dangers which arise during the progress of the work, but are due to the failure of the employer to furnish a reasonably safe place to work.

Argued Oct. 30, 1911. Appeal, No. 188, Oct. T., 1911, by defendant from judgment of C. P. No. 4, Allegheny Co., Third Term, 1908, No. 822, on verdict for plaintiff in case of James M. Barry v. Jones & Laughlin Steel Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SWEARINGEN, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $7,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant and in refusing defendant's motion for judgment n. o. v.

*William A. Challener,* with him *Clarence Burleigh* and *John D. McKenna,* for appellant.—When danger can only arise as work progresses and be caused by the work done, the employer is not bound to stand by during the progress of the work to see when the danger arises: Coleman v. Keenan, 223 Pa. 29; Durst v. Carnegie Steel Co., 173 Pa. 162; Welch v. Stone Co., 215 Pa. 34; Schneider v. Phila. Quartz Co., 220 Pa. 548.

*John C. Bane,* for appellee.—A master is required to furnish his servant with a reasonably safe place to work, and, while the work is in progress, to keep and maintain this place in a reasonably safe condition: Finnerty v. Brunham, 205 Pa. 305; Lillie v. Car & Foundry Co., 209 Pa. 161.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

This was an action of trespass brought by an employe to recover damages for injuries sustained while engaged in the service of his employer. The errors alleged in the two assignments are that the court refused to direct a verdict for the defendant, and subsequently declined to enter judgment for the defendant non obstante veredicto. The case turns upon which of two principles of law is applicable to the facts disclosed by the testimony on the trial of the cause. The position of the defendant company, the appellant, as stated by its counsel, is that the accident to the plaintiff was occasioned by the nature and the character of the work done, and that the plaintiff's injuries were caused from dangers which arose during the progress of the work for which the company was not liable. The plaintiff, the appellee, claims that his injuries resulted from the failure of the defendant to furnish him a reasonably safe place to work, and in not using reasonable care to maintain it in such condition.

The defendant company is engaged in the manufacture of steel on the South Side, Pittsburgh, and the plaintiff was employed as a vessel foreman in the Bessemer department of the plant. It was his duty to see that the converters were kept in good working order and that they were kept in operation. There was a vessel floor or platform extending around the converters which was about twelve feet above the ground floor. A railroad track was constructed on the platform, and upon that track the molten metal was brought in cars, from any point in the mill to the converters and deposited in them. About fifteen feet above the vessel floor there was a roof-shield of boiler iron constructed in the shape of a right angle triangle for the purpose of protecting the superstructure and roof of the mill from discharges from the converters. The hypothenuse of the triangle was parallel with the roof, the base was the horizontal face of the roof-shield and about fifteen feet directly above the converters, and the perpendicular face of the roof-shield extended to the roof. After the molten iron is placed in the converter and it is elevated to a perpendicular position, a blast of cold air is sent through the tuyere to the interior of the converter for the purpose of expelling the slag, dross and other impurities in the metal. These impurities, called "scull" by the workmen, are discharged from the top of the converter and driven against and deposited on the roof-shield. This recrement on the roof-shield cools and hardens, and after accumulating falls, alighting on the vessel floor.

In the performance of his duties, the plaintiff was required to be on the vessel floor or platform. On the day of the accident, July 11, 1907, a portion of the molten metal in one of the cars had "spilled over" on the railroad track, and before the track could be used again it was necessary to remove the spilled metal. While the plaintiff was engaged in assisting to remove the metal, he was struck on the head by a piece of

"scull," knocked to the ground floor and very seriously injured. The plaintiff introduced testimony to show that it was the duty of the defendant to keep the "scull" cleaned off the roof-shield so that he and others who were required to be upon the vessel floor while engaged in operating the converters would be protected from injuries resulting from the fall of "scull" from the roof-shield. He testified that the "scull" needed constant attention, that it was the company's business to give it such attention, and that the company had, on other occasions, sent men with proper instruments to remove it. He says he knew that the "scull" was likely to fall, but that he also knew that it was the duty of the company to have it removed and that the company had, at other times, removed it from the roof-shield so as to protect the employes at work on the vessel floor. The plaintiff's evidence tended to show that at the place he was required to work he could not and did not see whether there was any accumulation of "scull" upon the roof-shield at the time of the accident.

The learned court instructed the jury that if the accumulation of the "scull" on the roof-shield would and did take place, and the defendant undertook and did from time to time keep the roof-shield cleaned of the "scull", and on the occasion of the accident neglected to do so, the plaintiff was entitled to recover; but if, as the defendant claimed, the accumulation of "scull" upon the roof-shield was a transitory danger that occurred in the progress of the work, it was not the duty of the defendant to keep it cleaned off the roof-shield and the plaintiff would not be entitled to recover.

An employer, as we have frequently held, is not liable for injuries to an employe from dangers arising during the progress of the work and caused by the work done. He is not required to stand by during the progress of the work to see when a danger arises. It is sufficient if he provides against such dangers as may possibly or

probably arise, and gives the workmen the means of
protecting themselves; they should look out for such
dangers and use the means provided: Durst v. Car-
negie Steel Co., 173 Pa. 162. In such cases the em-
ployer cannot anticipate the unexpected danger, and
hence cannot be required to make provision against it.
But the case in hand is not ruled by this principle.
The accident was not caused by the plaintiff nor by a
fellow employe; nor was the cause of it unexpected and
not to be anticipated by the employer. In the opera-
tion of the converters, the defendant knew that the
"scull" would be discharged therefrom and be deposited
on the roof-shield. That was inherent in the business
and was certain to occur in the operation of the con-
verters. The plaintiff and other employes whose du-
ties required them to be on the vessel floor had no con-
trol over the "scull" and were in no way responsible
for its being deposited on the roof-shield or for its fall-
ing therefrom to the vessel floor. It was not their duty
to remove it or in any way to interfere with it. The
plaintiff, if the evidence is believed, did not and could
not have seen the "scull" which fell and caused his
injury. He was therefore not inviting the injury by
standing under a known danger; on the contrary he
was where his duty required him to be and where he
had reason to believe he would be protected by his
employer from the falling recrement. Assuming the
testimony produced by the plaintiff to be credible, as
the jury found, the defendant recognized the danger
and on various occasions removed the "scull".

It is clear that the question at issue in the cause is
whether the defendant company furnished the plain-
tiff a safe place in which to perform his duties, and
whether it continued to keep it in the same condition.
The law is settled that it is not only the duty of the
master to provide a safe place for the servant to work,
but also to maintain it in a reasonably safe condition
by inspection and repair. That is a direct, personal,

absolute obligation from which nothing but perform-
ance can relieve the master.   It was therefore mani-
festly the duty of the defendant company not only to
see that the place in which the plaintiff had to work
was safe when he entered upon the performance of his
duties, but also to maintain the place in a safe condi-
tion while he was engaged in his work on the vessel
floor.   The company knew the "scull" would accumu-
late on the roof-shield and harden and fall, and would
alight at the very point on the vessel floor where the
plaintiff had to do his work.   This was an ever present
danger to all the employes on the floor, and the de-
fendant company had full knowledge of it.   It is true
that the employes also recognized the danger, but it is
equally true that if the defendant was required to keep
the place reasonably safe and protect them from the
known danger, it was its duty to maintain a constant
vigil on the "scull" adhering to the roof-shield, and see
that it was removed before it could harden and fall to
the vessel floor.   The employes engaged at this place
assumed the dangers necessarily incident to their em-
ployment, but this rule cannot be extended so as to re-
lieve the defendant here from the duty to keep watch
on and remove the "scull" so as to protect the em-
ployes from the danger inherent in and arising from
the operation of the converters.   These dangers neces-
sarily arose from the business, and being known to the
defendant company and it having the power and being
its duty to afford protection against them, it cannot be
heard to say that the dangers were incident to the
service and therefore it is relieved from liability.   The
facts found by the jury, under a charge to which no
exception was taken, show that the defendant company
failed in its duty to furnish the plaintiff a reasonably
safe place in which to perform his work, and that this
failure of duty without negligence on part of the plain-
tiff resulted in the injuries for which this action was
brought.   It follows that the court committed no error

1912.]                   Opinion of the Court.

in declining to direct a verdict for the defendant, or in refusing to enter judgment for the defendant notwithstanding the verdict.

The judgment is affirmed.